## STATE OF MISSOURI, Respondent, v. MUIR, Appellant.

### St. Louis Court of Appeals, March 9, 1909.

1. HIGHWAYS: Dedication: Acceptance. At common law dedications by landowners and acceptance by the public was a valid method of creating highways and that doctrine is a part of the law of this State.

2. ————: User: Dedication. The last clause of section 9472, Revised Statutes 1899, providing that no lapse of time should divest the title of an owner of land used for a public road unless public money or labor should be expended upon it, has no relevancy to a case where there is a voluntary dedication and acceptance by the public.

3. ———: Dedication: User: Acceptance.    Where the owner
of land adjacent to a highway dedicated a strip for the purpose
of widening it for a public highway, and it was used contin-
uously at intervals for a period of over ten years, this was
sufficient acceptance of the dedication to constitute it a high-
way so that a subsequent owner of the land thus dedicated
was guilty of obstructing a public highway in fencing it up.

Appeal from Scotland Circuit Court.—*Hon. Chas. D.
Stewart,* Judge.

AFFIRMED.

*E. R. Bartlett* for appellant.

(1)    Aside from the statute, which should conclude
this case there is neither dedication nor  acceptance shown
that would establish a right under any law, or in reason,
or justice.    Dedication (without deed) must be proven
to be by clear intent, of the owner, to give a specified
property, with acts of intended doing which show that
intent carried out.    5 A. and E. Ency., page 400; Baker
v. Hart, 8 Mo. 443; Baker v. Charles, 37 Mo. 13; State
v. Young, 27 Mo. 159; Brink v. Collier, 56 Mo. 164;
Baker v. St. Louis, 99 Mo. 303; Heitz v. St. Louis, 110
Mo. 618; Vossen v. Daniel, 116 Mo. 379; Russell v. Santa
Fe, 70 Mo. App. 88; McShea v. City, 79 Mo. 41; Baker
v. Vanderburg, 99 Mo. 378; 77 Mo. App. 329; 61 Mo.
App. 424, and 27 Mo. 216.    Leaving a strip vacant is
not a gift or presumption of intent to give.    Baird v.
Board of Education, 73 Mo. 304; Baker v. Squire, 77
Mo. App. 329.    (2)    In any dedication, acceptance by
proper authorities is required and should be shown by
order of record.    5 A. and E. Ency., page 414; R. S.
1899, secs. 9410-9418.    In the absence of a record, there
must be shown an acceptance by the authorities, by
work and claim; and also, a use by the public generally
for ten years, such use must be continuous, by the gen-
eral public and worked by the authorities under claim
of right, with the knowledge and acquiescence of the

owner in both the use and claim. State v. Parker, 90 Mo. 334; State v. Macy, 72 Mo. App. 427; State v. Walters, 60 Mo. 463; State v. Wells, 70 Mo. 635. Mere user alone, or permissive use, will never establish a right. 9 A. and E. Ency., pp. 287-8; Romberger v. Miller, 61 Mo. App. 422. To accept by user would require the same as to establish by usage alone.

GOODE, J.—Appellant appealed from a conviction on an information filed against him for obstructing a public road. The points of law raised by appellant's counsel are too numerous and the discussion of them in the brief too wide-ranging for us to follow the argument throughout its course. Five or six instructions were given for the State, fourteen for appellant and seven asked by him were refused. All the adverse rulings on the requests for instructions and some rulings on the evidence, are assigned for error and various legal theories advanced to maintain the assignments. Notwithstanding this elaborate presentation of the appeal, the evidence is clear and uniform upon the questions which really call for decision, but many statements of fact are contained in appellant's brief which probably are true, but cannot be considered because they do not appear to have been given in evidence. In October, 1898, appellant purchased from Jane Tolbert some land lying immediately north of the strip of road in controversy. Immediately south of one forty-acre tract of the purchase, lay forty acres which were owned by E. T. Small prior to 1868, and hence were known as the Small tract, and from said year to 1896 belonged to John W. Muir, appellant's father, who conveyed to O. P. Muir, who in turn conveyed to Hamilton Moore, May 13, 1899. A public road extended east and west between the Tolbert and Small lands and had as far back as 1868. It opens into a north and south public road running on the east side of appellant's and Moore's lands. In 1892 Mrs. Tolbert, appellant's grantor, set her fence back north,

thereby widening the road from sixteen to eighteen feet between herself and said J. W. Muir, and intending to dedicate the strip thus excluded from her field to the public, the fence being moved for said purpose pursuant to an understanding and arrangement with John W. Muir. The road remained as widened until she sold her land to appellant. The old or main traveled portion of the road was miry in wet weather and snowdrifts would accumulate against an embankment four or five feet high on the north side, along which embankment ran the strip in controversy; and after it had been set out of her inclosure by Mrs. Tolbert, the travel would pass over it when it was the preferable route. As one witness said, "it was a kind of escape" from the mud and snow. Appellant insists there was no proof of travel on it except in five instances, but the evidence tends to show it was traveled for years whenever, from weather conditions, it afforded the better way, but in good weather the old part was used because it was level. One of the supposed five instances was that of a man who used it during a season in hauling wood. In late years telephone poles had been set along the strip to carry wires, no doubt under the authority of section 1251 of the statutes (1899). In fine the entire width of the land opened by Mrs. Tolbert for the use of the public, was used more or less from the date her fence was set back until the fall of 1904, or six years after appellant had purchased the land; when he moved the fence again southward some nine or ten feet at the east end, but converging toward the west. The space he took in by the removal of the fence at the west end was perhaps not more than a foot wide, and the space inclosed was triangular. He took into his field some of the telephone poles and rendered it impossible to drive over the ground Mrs. Tolbert had opened for public use, for though he did not include the whole of the dedication in his inclosure, he advanced his fence far enough south to prevent the use of the por-

tion left outside, because the fence was set so close to the brow of the embankment a wagon and team had no room to pass between the fence and the brink. The intention on the part of Mrs. Tolbert to open the strip in question for public use was proved beyond a doubt, and if the strip thereby became in law part of the public highway, appellant committed an offense when he inclosed part of it; and really this is the only point of merit in the appeal. Appellant's counsel insists a complete scheme of legislation for the opening and widening of roads and highways and the acquisition by the public of easements in them, is provided in chapter 151 of the statutes and no method of establishing or adding to any road is now allowed except by the methods therein prescribed. As a further premise he says the common law mode of dedicating land for a highway has been abrogated by the statutes, and that as Mrs. Tolbert's attempt to give the strip in question to widen the road could only operate as a common law dedication, the attempt proved abortive; especially as evidence was lacking to prove the county authorities ever expended money or labor on the strip. Whatever force this reasoning has is derived from the last clause of section 9472 of the statutes, which clause was enacted in 1887 (Laws 1887, p. 257) and says that in all other cases except those enumerated in the preceding part of the section, "no lapse of time shall divest the owner of title to his land, unless, in addition to the use of the road by the public for a period of ten consecutive years, there shall have been public money and labor expended thereon for such period." The first paragraph says all roads that have been opened by an order of the county court and a plat thereof made and filed with the clerk of the court, and which have been used as public highways for ten years or more, shall be deemed legally established, notwithstanding irregularities in the proceedings to establish them; and that non-user by the public for ten years shall be deemed an aban-

donment of the same. The common law upheld imme-
morially dedications by landowners and acceptance by
the public as a valid method of creating highways, and
this doctrine became, at an early day, part of the juris-
prudence of our State. [Rector v. Hartt, 8 Mo. 448.]
We find nothing in the cited section or in the chapter
of the statutes concerning roads and highways, which
indicates a purpose of the part of the Legislature to
abolish these common law dedications for road pur-
poses. The object of the particular section was to de-
clare what period of travel over land that had been
irregularly opened for a road by the county court,
would suffice, despite the irregularities, to constitute
the land a public road, and what period of non-user
would constitute an abandonment of it as a road. The
period fixed was ten years, and a proviso was added to
prevent the owner of land traveled over by the public,
from being deprived of his title in any instance not
specified in the statutes, unless, besides ten years of
continuous travel, public money and labor had been ex-
pended on the land for the same period. The object of
the latter clause was to prevent the creation of a public
easement for highway purposes in land which there had
been no attempt to condemn except by the public's us-
ing and also improving it for ten years. The section
as a whole, is dealing with the creation of highway
easements by adverse public use and does not refer to
dedications, which, indeed, we find no mention of in the
entire chapter. As it is certain Mrs. Tolbert intended
to donate the use of the strip in question to the public,
the remaining question is, whether there was evidence
from which the jury might find the donation was ac-
cepted. It was not proved either money or labor had
been expended by the county in improving the strip;
but continuous use by the public, as occasion arose,
during the period from 1892 to 1904, was evidence of
acceptance; at least if it had continued so long and
been so extensive that the public would be materially

discommoded and private rights impaired by interrupting it. [Putnam v. Walker, 37 Mo. 600; Bauman v. Boeckler, 119 Mo. 189, 200; Elliott, Roads and Streets (2 Ed.), sec. 154.] The jury might find a use of that extent and duration had prevailed. The proviso in section 9472 against divesting the title of an owner by using without improving his land for a road, has no relevancy to the mode in which a voluntary dedication may be accepted by the public, but only to the mode in which an involuntary or prescriptive right may be acquired against the owner by adverse use. It may be that such use as we have here by the public would not bind the county to keep the strip in repair, but nevertheless it sufficed to prove acceptance of the dedication. The evidence is persuasive that appellant knew when he purchased of Mrs. Tolbert she had set the strip in question outside her inclosure with the intention of devoting it to road purposes, and took the deed from her which included the strip, with full knowledge of all the facts. The instructions on the issues of Mrs. Tolbert's intention to dedicate, whether she set the strip outside her inclosure by mistake, public acceptance of the dedication, appellant's intent to obstruct the road, and on all the other issues of fact, were favorable to him and we find no reversible error in the record. Therefore the judgment will be affirmed. All concur.