RALPH SELLERS and GRACE SELLERS, Respondents, v. BEN SWEHLA, Appellant, No. 43614—261 S. W. (2d) 26.

Court en Banc, September 14, 1953.

Motion to Correct Opinion Overruled in Opinion Filed, October 12, 1953.

*Jean Paul Bradshaw* and *Fields & Low* for appellant.

*Donnelly & Donnelly, Robert T. Donnelly* and *Phil M. Donnelly* for respondents.

ELLISON, J.—This cause is here on transfer from the Springfield Court of Appeals. It is an injunction suit brought by the plaintiff-respondents Sellers to restrain the defendant-appellant Swehla from fencing across the flat curved road, marked No. 5 on the plat on the opposite page, cutting across the northeast corner of Swehla's land and swinging easterly to the northeast corner of Sellers' land. At both ends the curved road joins a newer straight road No. 1. Respondents Sellers contend the curved road has been a public road by prescription under Laws Mo. 1887, Sec. 57, p. 257, now Sec. 228.190, R.S. 1949, V.A.M.S.

The injunction suit was brought by the Sellers in 1949 and was tried in the circuit court in February, 1950 and taken under advisement. While so pending on January 1, 1951 the Sellers by general warranty deed sold the land to a Mr. and Mrs. Gearhart, but the deed was withheld from record and the conveyance was not known either to the circuit judge or the defendant-appellant Swehla or his attorneys

1. County road established by County Court 1903.

2. Gap in Seller's fence.

3. Fence built by Jordan 1904.

4. Seller's fence.

5. Old Stoutland – Richland road.

while the cause was under advisement. Thereafter in 1953 the Gearharts sold the land to the present owners, Mr. and Mrs. Messmore. For these reasons appellant Swehla's counsel contend the case is moot so far as concerns the respondents Sellers.

In May, 1951, almost fifteen months after the cause had been submitted and about four months after the Sellers had deeded the land to the Gearharts, the trial court entered a decree granting the in-- junctive relief prayed by the respondents Sellers, on the theory that the diagonal road was a public road. Defendant Swehla appealed to the Springfield Court of Appeals, where the plaintiff-respondents Sellers, still without disclosing their sale of the land to the Gearharts, appeared as the respondents and owners and asked that the decree below be affirmed.

But on December 3, 1952 the Court of Appeals reversed the decree of the circuit court [253 SW. (2d) 847] and held the diagonal road was not a public road because there had not been sufficient adverse user, and because it had been abandoned when the new public road No. 1 marked on the plat was opened on the quarter section line in 1903, in consequence of which Swehla had a right to build the fence across the road on his land, and the plaintiff-respondents Sellers were not entitled to an injunction thereagainst.

On that issue whether the diagonal road which defendant-appellant Swehla had fenced off was a public road, the trial court held it was by: (1) prescriptive right gained by continuous public use for 75 years, acquiesced in by the successive owners of the land over which it passed; (2) adverse possession and continuous use by the public for ten consecutive years *prior* to 1887; (3) similar adverse possession and use for more than ten years *after* 1887, and the expenditure of public money thereon during that time.

It is undisputed that defendant-appellant Swehla's 40 acres, the west one of the three 40-acre tracts, was rough, unimproved, uninhabited and unenclosed woodland, except a small pasture fenced off at the southwest corner. On plaintiff-respondents Sellers' 40 acres, next adjoining, a log cabin had been built and later a more modern residence further south. The old Stoutland-Richland flat curved or diagonal road marked No. 5 on the plat, started at the west end with two prongs, ran between the cabin and the house and continued easterly until it forked again at the east end as shown on the plat.

The opinion of the Court of Appeals [253 SW. (2d) 847] goes into the history of the road and includes the foregoing plat of the land involved. However, no map or plat was introduced at the trial. We use the one included in the opinion solely for descriptive purposes. It shows the present Stoutland-Richland straight line road marked No. 1 running along the north side of the three 40-acre tracts involved. It was established by the county court in 1903 and has since been in general use. The plaintiff-respondents Sellers own the S ½ SW ¼ of

Sec. 29. The defendant-appellant Swehla owns the SE ¼ SE ¼ of Sec. 30, next west.

Long prior to the establishment of that road the old Stoutland-Richland flat curved road, marked No. 5, had run northwesterly across both appellant's and respondents' land—respondents say since 1875. It was the one appellant had obstructed with a fence. The opinion, 253 SW. (2d) l.c. 852 (3-5) states it does not believe the evidence justifies a finding that the curved road was used by the public continuously for ten years prior to 1887. But it adds that supposing this were true the road was changed in 1903, as stated above, and the straight line road further north was substituted therefor and has been used by the public continuously ever since, and the old curved road has been abandoned. The abutting landowners donated the land for the new location, and the county court ordered it in, indicating the old meandering road was no longer a public road.

The Court of Appeals opinion further held the evidence failed to show the old road, across which appellant Swehla had placed the obstructing fence, had been kept up for public use at public expense and had been established by prescription by open, notorious, *exclusive*, continuous, uninterrupted, hostile and adverse user with the knowledge and acquiescence of the owner for a long period of time. On the contrary it ruled the use of the road was permissive only, and not such as would prevent the present owner, appellant Swehla, from denying the existence of a prescriptive right in the respondents Sellers. Further, the opinion ruled the evidence did not justify a finding that the old road had been used continuously for ten years prior to 1887 as provided for by Laws Mo. 1887, p. 257.

Sellers testified Swehla had seen him doing work on the diagonal road across the northeast corner of his (Swehla's) land, and that he (Sellers) had dragged it and put 80 wagon loads of rock there five or six years earlier, and 20 yards of gravel, all without objection by Swehla. Sellers also said Swehla had seen him dragging the road, but made no objection whatever. Swehla's first objection was when he, himself, built the fence across the road.

Further Sellers testified the road commissioner, or maintainer, Fulbright, had maintained it about a year before he was testifying. A previous maintainer, Hillhouse, since deceased, had done work on the road about 5 years earlier. Respondent Sellers said he had dragged the diagonal road across Swehla's corner with a horse drawn grader and had ditched it with shovels every year for nine years. The equipment he used belonged to the public—the road district or state. He had the grader there for two days. The diagonal road is 12 or 14 feet wide. In some places it is worn down 3 feet from use over many years.

Sellers said the diagonal road across the northeast corner of Swehla's land was the only way out to the public road [marked No. 1] from

292

his property, and also the only entrance thereto. In this connection there appears on the foregoing map an opening marked 2, from the public road marked No. 1 on the north side of Sellers' land. Regarding that Mrs. Sellers testified it was a mere opening for hauling out hay and furnishing an exit to another small piece of ground they had further north, and would not serve for a regular road because the ground is too muddy. She said they had tried to dump rock and gravel there.

As heretofore stated, the Court of Appeals opinion held the evidence was insufficient to justify a finding that the flat curved road No. 5 had become a public road by continuous use, or prescription, for ten years prior to 1887, as required by Laws Mo. 1887, Sec. 57, p. 257. That statute provided:

"All roads in this state that have been opened by any order of the county court, and a plat made thereof, and filed with the clerk of the county court of the county in which such roads are situated, and have been used as a public highway by the traveling public *for a period of ten years or more,* shall be deemed legally opened and' established county roads, notwithstanding there may have been irregularities in the proceedings had to establish and open such road; and non-user by the public for a period of ten years continuously of any public road, shall be deemed an abandonment of the same: provided, that *in all other cases* than such as are hereinbefore provided for, no lapse of time shall divest the owner of his title to his land unless, in addition to the use of the road by the public for the period of ten consecutive years, there *shall have been public money or labor expended thereon* for such period." [Emphasis ours]

This statute remained the same for 22 years until changed by Laws Mo. 1909, Sec. 15, p. 733, which dispensed with the filing of a plat, but retained a requirement that public money or labor be expended on the road for such ten year period of public use. Laws Mo. 1917, Sec. 13, p. 450 further deleted the provision that such roads shall be public roads "notwithstanding there may have been irregularities in the proceedings had to establish and open such road." With these changes the present Sec. 228.190 remains substantially the same as it was in 1887.

Sec. 57 of the original 1887 Act has since been generally construed to mean that the prescription period of "ten years or more" specified therein meant at least ten continuous years before the date of its enactment, in other words from 1877 or earlier, and that otherwise the statute would not run unless public money or labor had been expended thereon over the ten year period.[1]

---

[1]State v. Pullen, 43 Mo. App. 620, 624; Harper v. Morse, 46 Mo. App. 470, 473; State v. Macy, 72 Mo. App. 427, 431-2; State v. Craig, 79 Mo App. 412, 418; State ex rel. McIntosh v. Haworth, 124 SW. (2d) 653, 656(5); State v. Transue, 131 Mo. App. 323, 329; State v. Muir, 136 Mo. App. 118, 121-3; Jordan v. Parsons, 239 Mo. App. 766, 775(4), 199 SW.(2d) 881, 886(4).

■ With reference to the use of the flat curved road No. 5 running northwesterly across the Swehla and Sellers land, there were several witnesses who testified to its early use by the public of the neighborhood. Henry Evans, 86 years old at the time of the trial in 1950 and born in 1864, stated he had known the road since he was 8 years old, which would be since 1872. He said it was the only way of going east to the community there, and that twenty families resided in that neighborhood. The road passed in front of the Sellers [then Begley] house. He and a bunch of other taxpayers had done work on the road and worked out their poll taxes. That was 30 or 35 years ago. If a place in the road got bad, they would turn out around it, but it didn't make a new bed. He was supervisor for a while. Hillhouse was in charge of the district where Sellers' land was.

James Kissinger was 83 years old at the time of the trial in 1950, and born in 1866. He had traveled the road involved repeatedly visiting his grandfather ever since he could remember, which he guessed was 70 years or more ago.

Henry Kissinger, 79 years old, was born in 1871. He also used to visit his grandfather in the Begley [now Sellers] neighborhood and traveled over the road in question. He made a guess that he was about 7 years old at the time.

Mrs. Demaris Lambeth was 91 years old at the time of the trial in 1950. She was a sister of the witness Henry Evans and testified she had known the land here involved since she was a child 8 or 10 years old, which would be since 1867 or 1869. Her family sold milk to people working on the railroad. The road by the Begley [now Sellers] place was there then. Ever since she could remember.

John M. Honey testified he was 84 years old and had lived in the Stoutland neighborhood 78 years. He had known the Swehla 40 acres over 70 years. It was unfenced. For 75 years there was a diagonal road across it leading westerly to Stoutland and easterly across the Sellers land, and thence on to Richland, but this latter part was fenced off by a man named Jordan 50 years ago. No public money was spent on this diagonal road that Honey knew of. But prior to 1903 it was necessary to use the diagonal road in getting to Stoutland.

Walter Davis, 83 years old at the time of the trial in 1950 and born in 1867 testified by deposition that he had known the Sellers [then Begley] place since about 1884. The flat curved road shown on the plat went to Stoutland. The public used the road and there was a settlement of farms beyond it to the east which used the road across the Sellers and Swehla tracts in going to Stoutland. It was the only route open at the time.

All this testimony shows the flat curved road No. 5 was very old. We think we are justified in crediting the testimony of the witnesses who had known it the longest—Henry Evans and Mrs. Lambeth. On the basis of all the testimony the trial court found, as heretofore

stated, that appellant Swehla's 40 acre tract was open and unfenced along the course of the road until 1949, and that it had been used for public travel for 75 years and more, and more than ten years before 1887, as required by the then statute, Laws Mo. 1887, Sec. 57, p. 257. ▮ It may well be that little public money or labor had been expended on it during the early part of that period. It was established by prescription and had not been opened by order of the county court.

The evidence shows that in the earlier years a number of families living southeast of the locus in quo had used this road No. 5 across the northeast corner of Swehla's 40 acres in going to and from Stoutland, but that after the new county road No. 1 was established in 1903, that traffic decreased. And appellant Swehla's brief concedes the witnesses on both sides testified, and the trial court found, that the public generally had traveled across his unfenced 40 acres for 75 years without objection until he built a fence across the corner of it about a year before the filing of this suit, and three years after he had bought it, when he decided to graze some sheep thereon.

In those days (as now) the only requirement of the statute was that "all fields and inclosures" should be fenced in a prescribed manner, Laws Mo. 1877, Sec. 1, p. 8; Sec. 272.010, R.S. 1949. Another statute covered the building of partition fences between the lands of adjoining owners on demand of either. Laws Mo. 1877, Sec. 6, p. 9; Sec. 272.060, R.S. 1949. But obviously this did not apply to open range land used for farming.

In such circumstances it has been held that prior to the enactment of Sec. 6987, R.S. 1879 and Laws Mo. 1887, Sec. 57, p. 257, a road could become a public road by prescription when used as such for a period of ten years or more, notwithstanding the county court had never made an order establishing it, and no public money had been expended upon it.[2]

▮ The first contention in the brief for appellant Swehla is that the trial court *erred* in ruling the flat curved road No. 5 running diagonally through his 40 acres and the adjoining 40 acres of the respondents Sellers, was a public road by prescriptive right gained by continuous public use thereof for 75 years and acquiescence of the underlying landowners. Continuing, the brief says this prescriptive right may be shown in either of two ways: (1) by adverse public

[2]School District No. 84 v. Tooloose (Mo.) 195 SW. 1023, 1025(3); Borchers v. Brewer, 271 Mo. 137, 142 (1,2), 196 SW. 10, 12; State v. Kitchen, 205 Mo. App. 31, 33-5(2), 216 SW. 981, 982 (1); Borders v. Glenn (Mo. App.) 232 SW. 1062, 1063-4 (2,3); Phelps v. Dockins (Mo.App.) 234 SW. 1022, 1023 (4); Rosendahl v. Buecker (Mo.App.) 27 SW. (2d) 471, 472 (3); Wallach v. Stetina (Mo.App.) 28 SW. (2d) 389, 390 (2,3); Gilleland v. Rutt (Mo.App.) 63 SW. (2d) 199, 201-2 (3,4); Sheridan v. City of St. Joseph, 232 Mo.App. 615, 628(7), 110 SW. (2d) 371, 378-9(8); State ex rel. McIntosh v. Haworth (Mo. App.) 124 SW. (2d) 653, 654-6 (1-6); Jordan v. Parsons, 239 Mo. 766, 775 (4,5), 199 SW. (2d) 881, 886 (4).

use for the period of the ten year statute of limitations; or (2) by public user in such circumstances and for such period of time with the acquiescence of the landowners, as to imply a dedication of the land for the road on their part and a prescriptive right thereto in the public evidenced by its acceptance, appropriation and use of the particular land as a public highway.

Paragraph 3 of the trial court's findings of fact stated the defendant-appellant Swehla's 40 acres had been vacant, open and unfenced until about two years ago (1949)—which was true. Paragraph 4 found that during the past 75 years the public generally had traveled across that land wherever they pleased without objection by the owners [which included Swehla]. And his brief concedes these facts found by the trial court were admitted by the witnesses on both sides.

Nevertheless, the brief argues the respondents Sellers failed to prove the use of the flat curved road No. 5 by the public was *adverse*. This contention is based in part on the following facts. Sellers testified that on one occasion "5 or 6 years ago" [in 1944 or 1945] a rain had made mudholes in the road across Swehla's 40 acres, and he [Sellers] was dragging it to drain them. Swehla was near by and Sellers told him he was going to bring a plow and open the holes. He stated Swehla replied: "Well, that will just be fine, I'll help you any time you get ready to do that." Later Sellers did the work with a shovel without help from Swehla. In his brief here Swehla argues the foregoing amounted to Sellers asking his "permission" to drain the road, and thereby demonstrated he was not making an "adverse use" of it. We see no merit in this contention.

Next, appellant Swehla's brief concedes there is a general presumption that where a roadway has been used for more than ten years the use is presumed to be adverse and the burden is on the landowner to prove that it was merely permissive, citing Wallach v. Stein, supra, 28 SW. (2d) l.c. 391 (3). But he argues the rule is the other way where the land is vacant, unenclosed and unoccupied, and that the use is then presumed to be permissive and not adverse, citing Anson v. Tietze, 354 Mo. 552, 562 (8), 190 SW. (2d) 193, 198-9 (13), which in turn cites and quotes portions of 39 C.J.S., § 23, p. 942. The latter first states that "according to some authorities, the unexplained public user of a road as a highway for the prescriptive period raises a presumption of the existence of the other elements of a highway by user, such as that the use *was adverse* and under a claim of right," citing Rosendahl v. Buecker (Mo. App.) 27 SW. (2d) 471, 472 (2), where part of the road had been used more than 70 years.[8]

The Anson case further quotes 39 C.J.S., § 23, p. 942, supra: "the use of vacant, unenclosed, and unoccupied land for a highway will be presumed to have been by permission and not adverse" and there stops. But the C.J.S. text continued: "and even though such use

---

[8]See also 29 C.J., §27, p. 391; Strong v. Sperling, 200 Mo.App. 66, 77-8 (1,3).

was open and notorious, the owner will not be presumed to have had notice thereof, *especially where he resided at a distance from the land."* [Emphasis ours]. In the instant case the road went *through* land all or most of which apparently was occupied by the resident owners or tenants. Others in the neighborhood lived on roads feeding into it. Also the text later states there is "no presumption that use of land as a way by the public was *without* the permission of the owner." That is true. The use may have been either permissive or dedicatory, as shown by the evidence. [Emphasis ours]. It cites three Missouri decisions already listed here, supra 2, the Wallach, Rosendahl and Tooloose cases.

The Anson case cites five other Missouri decisions which are to the general effect that to establish a public highway by user the claimant must prove his possession and use thereof to have been adverse for the statutory period of limitation to the actual knowledge of the underlying landowner, or he must show occupancy and use thereof for the same period in circumstances so open and notorious as to import knowledge to the owner as a matter of law. But in that connection it must be remembered that in this instance the road was established 75 years ago, when the law was less exacting and forgave irregularities in the initial proceedings to establish it, and for ten years before 1887 did not require public money or labor to be spent on it. Laws Mo. 1887, Sec. 57, p. 257.

It is said in the Annotation in 170 A.L.R., pp. 778, 779: "The resulting rule affirmed by a majority of American courts, though stated in varying forms, is as follows: Upon its appearing that a servitude has been enjoyed during the period required for prescription, openly, continuously and uninterruptedly, a presumption arises, in the absence of any other explanation, that the user was *adverse* and under a claim of right. The burden is then upon the *owner* of the soil to show that the use was permissive, or otherwise that it was not adverse." [Emphasis ours].

The general rule in this state is said to be "that the burden is upon the claimant to show the adverse character of the use; but in the absence of some showing that the use was permissive in its origin it is well settled that when one claims an easement by prescription and shows an open, continuous, visible and uninterrupted use for the period of the 10-year statute of limitation, the burden is cast upon the landowner to show that the use was permissive rather than adverse, if he claims it to have been so."[4]

---

[4]Fassold v. Schamburg, 350 Mo.464, 467(1), 166 SW.(2d) 571, 572(2); Meryl Realty & Inv.Co. v. Schumacher (Mo.) 264 SW. 368(1); Faulkner v. Hook, 300 Mo.135, 142(1), 254 SW. 48, 50(2); Schroer v. Brooks, 204 Mo.App. 567, 582(7), 224 SW. 53, 56(7); Novinger v. Shoop (Mo.) 201 SW. 64, 66(3); Gerstner v. Payne, 160 Mo.App.289, 295-6(1), 142 SW. 794, 795(1); Anthony v. Bldg.Co., 188 Mo. 704, 720(11), 87 SW.921, 924(4).

In our opinion the weight of the evidence in this case shows that when the flat curved road No. 5 was opened in or prior to 1875 and used by the traveling public for a period of ten years or more before the enactment of Laws Mo. 1887, Sec. 57, p. 257, it became a public road by prescription, notwithstanding it had not been sanctioned by an order of the county court and the filing of a plat, and no public money or labor had been expended upon it during that period. The old road then was the only road between Stoutland and Richland and there were at least twenty families residing in between, and others on two feeder roads leading off southerly. And there is good reason for believing the landowners and people served by the road No. 5 regarded it as prescriptive rather than permissive. They did so treat it for 28 years, until the new Stoutland-Richland road No. 1 was opened by the county court in 1903.

But when that was done the new road was straightened. The landowners' petition to the county court asked for a *change* in the previous location of the old road and for a resurvey at their expense. Notice of the intended application was given and the county court ordered the county surveyor to survey and locate the proposed change. He did so and made a favorable report, whereupon the county court ordered the change made accordingly on August 5, 1903. In these circumstances the new straight road No. 1 superseded the old flat curved road No. 5, and the latter was vacated.[5]

If it became a public road again it must have been by re-establishment and dedication under Sec. 9472, R.S. 1899 and Sec. 10446, R.S. 1909, now Sec. 228.190, by public use for ten consecutive years with expenditure of public money and labor upon it for that period. State ex rel. McIntosh v. Haworth [supra, note 1] 124 SW. (2d) l.c. 655 (3). Likewise the statute provides that non-user of the road by the public for a period of ten years continuously shall be deemed an abandonment thereof. The record shows respondent Sellers bought his 80 acres on August 1, 1942. To make a case of adverse public user for ten years he must show that he and his predecessors in title and the public had used the road for at least that period. His amended petition on which the case was tried was filed on May 31, 1949, 6 years and 10 months after he acquired title. And he testified at the trial in February, 1950, that it would not be until August that he had traveled the road for 9 years.

The evidence shows that after the opening of the new straight county highway in 1903 the traffic on the old flat curved road No. 5 decreased greatly. In fact it is conceded by respondent Sellers that it was closed by a fence at the east boundary line of his 80 acres, either by a Mr. Jordan, a former owner of his land, or the owner of the tract next

---

[5]Morris v. Karr, 342 Mo. 179, 181-2(1), 114 SW.(2d) 962, 963(1); State ex rel. Tummons v. Cox, 313 Mo.672, 680(4), 282 SW. 694, 695-6(5); Tummons v. Stokes (Mo. App.) 274 SW. 528, 529(2); Aldridge v. Spears, 101 Mo. 400, 406(3), 14 SW. 118.

east. Jordan was one of the petitioners for the new road, and various witnesses estimated the old road No. 5 had been closed at least 30 to 50 years. The Sellers 80 acres also was fenced, probably by Jordan, but with a gap left open at the ▮▮▮ west entrance of the old road. This could be used only by Sellers and those with whom he did business.

Diverting for a moment and considering the plat shown at the beginning of this opinion. It will be seen there are two diverging pronged roads leading southeast across the northeast corner of appellant Swehla's 40 acres to respondent Sellers' 80 acres. The south or right prong has fallen into disuse somewhat because of a mudhole therein especially in wet weather. But nevertheless either could be used in going to Sellers' land, and also in following the road shown swinging south deep into Swehla's land.

Since there was little or no evidence of adverse public user of the old road leading into Sellers' land beyond the time he had stated—less than 9 years—an effort was made to prove that time had been extended beyond the 10 year statutory limitation period, in the following manner. A landowner named Smith who lived northeast of the Sellers 80 acres testified that for 12 to 14 years he had owned another farm called the Bell place south of the Sellers land, and that in getting from his north farm to the other one he would go around the Sellers tract. That is, he would go west on the new county road No. 1 until he reached the pronged roads leading southeast across the northeast corner of the Swehla land and follow the one turning *south* through that land [but west of the Sellers farm] until he reached his lower farm. It was shown also that other farmers had long used this road running south and that wood had been hauled over it. But that did not prove user of the part of the old pronged road running *southeasterly* into the Sellers land. That was a different road used only by Sellers and those with whom he did business, but for less than the statutory period of ten years.

Further a witness named Thyr said he had owned the Sellers 80 acres for 17 years from 1920 to 1937. At that time the flat curved road No. 5 across his and Swehla's land was known as the old county road. It was mainly a horse and wagon road though he had driven his automobile over it. He didn't know of any work being done on it except what he did himself. No public money was spent on it. The people east of him used the new county road No. 1 just north of his farm, and not the old road, No. 5, which had long been closed at his east boundary. West of him the old south road across the unfenced Swehla tract was traveled by people coming up from the Smith or Bell neighborhood. But from that point on east only Thyr and those doing business with him used the old cul-de-sac road No. 5 to his place during the 17 years he lived on the Sellers land. It was his only

roadway out. To go north across his field to the new county road he would have had to cross a creek bed.

With reference to the time and amount of maintenance work done on the flat curved road No. 5 between Sellers' west line and the new county road No. 1. Joe Fulbright, road commissioner, testified he had worked on it once with a road grader in 1949. He was uncertain whether it was after this suit was filed; he thought not. It was the first time he had used a machine there. Sellers and the landowner named Smith had asked him to do the work. He took the road maintainer man along, and believed it was a public road, and that his work was done before the filing of this suit. He stated some of the other road commissioners had done work there. Respondent Sellers said he had seen a previous road commissioner, Hillhouse, since deceased, working on that part of the road with road equipment 4 years earlier. Sellers said he had put 80 wagon loads of rock and 20 yards of gravel on the road 5 or 6 years earlier. And he further stated he had used a horse drawn grader on the road and dragged it and ditched it with shovels annually for about 9 years.

Another commissioner, Bethurem, said he had been road commissioner for 15 or 20 years and that he had never done any work or spent any public money on the flat curved road No. 5 from the county highway across the Swehla land to the Sellers 80 acres. He added that the other road commissioners did not know of the work Fulbright said he had done. He also said no public funds were spent on *any* by-road. The two forked roads crossing the northeast corner of Swehla's land both showed evidence of usage and shifting, but he didn't know who used them.

Still another commissioner, Crabtree, had served with commissioner Bethurem for about 15 years up to 3 years before the trial. He testified that during all that time no public funds were ever spent on any public work done on the roadway No. 5 across the corner of Swehla's land, to his knowledge. He had worked on the county road No. 1 for 30 years, and on roads where commissioner Hillhouse had worked, but not at the same time.

Another witness Devore, 76 years old, had lived in the Stoutland neighborhood 41 years. He knew where the Swehla land is located, and of the two pronged trails across the northeast corner thereof leading to the Sellers 80 acres. He had never seen any vehicles being used on them except by himself. They were "around 60 or 75——" apart, and would shift about the width of a wagon. He never knew of any public money being used on them. He had done work on the county road No. 1 established in 1903 but did not know of any poll tax work being done on the older two pronged curved road No. 5 across the Swehla land, or of road machinery being used on it. It showed evidence of travel only as far as the house on the Sellers land. There was a gap or a gate at the west end of the Sellers tract. That

was in 1909 when the land was owned by Mr. Jordan. Anyone can still go that far.

With respect to roads other than those established by the county court, it will be recalled that ever since the enactment of Laws Mo. 1887, Sec. 57, p. 257 it has been provided, and is now under Sec. 228.190, that they shall be deemed public roads if they have been: (1) used as such by the public for ten years consecutively; (2) and public money or labor has been expended upon them for that period. If there has been a failure to meet either of those two requirements the road is not a public road. In our opinion neither requirement has been met in this case.

In the first place the flat curved road No. 5 going westerly from the Sellers land up to the point on Swehla's land where it joins the road coming from the Smith farm further south, had not been used as a public road, but only a private road from the Sellers farm to that junction. And in the second place Sellers did not say public money or labor had been expended on the road for ten years. He testified at the trial that he had used and worked on the flat curved road No. 5 less than nine years, and for less than seven years before he brought this suit. And there is no testimony that his immediate predecessors in title had used and worked upon the road or that public money had been spent upon it for a sufficient time to piece out the ten year statute of limitations.

This is true notwithstanding it has been held not absolutely necessary that public money or labor be expended on a road each and every year for ten years if it be kept in substantial repair. But it must be so kept for the whole of that period—in other words, from the beginning to the end. That was the holding of the Court of Appeals in this case 253 SW. (2d) l.c. 851-2(2). See also: State v. Kitchen, 205 Mo. App. 31, 38 (2), 216 SW. 981, 983(2); Garbee v. St. L.-S. F. Ry. Co., 220 Mo. App. 1245, 1256(9), 290 SW. 655, 658(8); George v. Crosno (Mo. App.) 254 SW. (2d) 30, 34(2).

There are two other assignments in appellant Swehla's brief. The first is that the trial court erred in finding for the respondents Sellers because there was no adequate description in appellant's petition or in the evidence of the roadway here involved, other than a statement of its general or approximate location in Sec's 29 and 30, Township 36, Range 14, Laclede County, Missouri. The plat set out at the beginning of this opinion and in the opinion of the Court of Appeals was not introduced in evidence, but was used in both opinions for illustrative purposes only.

On this point appellant's brief cites Peterson v. Beha, 161 Mo. 513, 519-20, 62 SW. 462 where a description of a road stated: "beginning at a point 10 *or* 12 rods north of the center of" a specified section of land, and thence proceeding on designated courses for specified distances. This court reversed and remanded the cause with directions

to the circuit court to ascertain the correct starting point, otherwise our opinion to stand. We see no reason why the same cannot be done here if and insofar as necessary.

■ Since writing the foregoing opinion the dissenting opinion of Dalton, J. has been filed. With respect thereto I suggest the following.

In the view of the writer this case was tried on the theory that the road in controversy is and has for many years been a public road. In their application for an injunction the plaintiffs alleged the road was used by the public and by them in particular. The circuit court's temporary restraining order restrained the defendant Swehla from interfering with the free passage thereover of the public and the plaintiffs in particular. Plaintiff Sellers' petition alleged that the road had been continuously and adversely used by the traveling public for more than 65 years, and that public money had been spent upon it for a number of years. He testified the public road commissioners had recently done work upon it with county road machinery.

The plaintiff Mrs. Sellers likewise testified two public road commissioners had done work upon it a year before she was testifying, and that one of them had done similar work five or six years earlier. She said poll taxes had been worked out on the road years ago, and that she judged it was a public road.

I therefore do not agree with the holding in the dissenting opinion that the case was tried on the theory the road in question was a private road. There could have been no reason for going back into the history of the road to 1877 if it was a private road. But I agree with the suggestion in the dissenting opinion that the cause be reversed and remanded with leave to the plaintiffs Sellers to amend their petition if so advised and try the cause on the theory that the road is a private road by prescription. In my opinion the case cannot be tried on the theory that the road was a public road and a private road at the same time, thus exempting the owner of private prescriptive rights from the payment of poll taxes or whatever exactions the law imposes with respect to public roads but not on private roads.

For the reasons stated, the cause is reversed and remanded with leave to amend the petition and try the case on the theory that the road in controversy is a private road by prescription. *Leedy* and *Tipton, JJ.*, concur. *Hyde, J.*, concurs in result. *Dalton, J.*, dissents in separate opinion. *Hollingsworth, J.*, and *Conkling, C. J.*, dissent and concur in dissenting opinion of *Dalton, J.*

■ DALTON, J. (dissenting).—I respectfully dissent from the conclusion reached in the principal opinion. I believe that the judgment of the trial court should be affirmed. It is wholly immaterial whether the road in question is a public road or is a private road. In either

event the plaintiffs are entitled to the relief asked and to the relief granted by the trial court.

The cause of action here is not for a declaratory judgment as to whether the road in question was legally established as a public road under Sec. 228.190 RSMo 1949 (that is, by use by the public for 10 years continuously and the expenditure of public money or labor thereon for such period). The action is one for an injunction to restrain the defendant from obstructing a road in which plaintiff claims a property right, to wit, a right of passage from his farm to the relocated public road. He claims that the road in question is his sole means of ingress and egress to his farm; and that his right of passage is [37] based upon adverse use by him and those under whom he claims and by the public in general for a period far greater than the 10 year statutory period. If plaintiffs have property rights in the particular road and their rights have been invaded by the obstructions placed by defendant, the plaintiffs have a right to the relief sought and to the relief granted whether the road is a private road by prescription or a public road by prescription. It is wholly immaterial to any of the essential issues in this action for an injunction whether plaintiffs' right to have the obstructions removed arises from the obstruction of a public or a private road. It is the interference with plaintiffs' rights in the road that gives rise to the cause of action presented.

Assuming that the evidence produced is insufficient to show that the portion of the old road from the plaintiffs' west line to the relocated public road was re-established as a public road subsequent to 1903, because of the absence of proof that public money or labor had been expended on the particular portion of the road continuously for a period of 10 years subsequent to 1903, yet without objection the proof clearly showed the use of this part of the old road as a private road by plaintiffs and those under whom they claim for the whole period from 1903 until the filing of the amended petition on May 31, 1949. In 1903 when the old road was vacated and the highway relocated, Jordan, the then owner of the 80 acre tract, fenced the 80 acres and left a gap at the west side of the property and continued to use the old road as a means of ingress and egress to the 80 acres from the relocated public road. From 1920 until 1937, Thyr, the then owner of the same 80 acres, continued to use this part of the old road as a means of ingress and egress to the property. We may concede that this portion of the road was used only "by Thyr and those doing business with him." After the 80 acres was fenced and that part of the old road across it was closed, the west portion was a mere cul-de-sac extending from the relocated public road to the gap at the west edge of the 80 acres now owned by plaintiff, but the evidence shows that everybody that wanted to use it used it.

Leonard Brown acquired the property from Thyr in 1937 and owned it until 1942, when plaintiffs acquired it. At that time there was a

wire gap across the old roadway where it entered the Sellers' property. No one objected to his use of the defendant's property in traveling along the old road from the west side of the 80 acre tract to the re-located public road.

Plaintiff Sellers acquired the 80 acres in August 1942 and he contin-ued to travel the road from his property line to the relocated public road until the time of the trial, some nine years prior to the filing of the amended petition on which the cause was tried. We may concede that the evidence shows that the old road from the Sellers property to the relocated public road was "used only by Sellers and those with whom he did business." It was a cul-de-sac and didn't lead any place except to plaintiffs' property.

Further, the evidence shows that Jordan, Thyr, Brown and Sellers, the various owners of the particular 80 acre tract in question, used this particular road as a matter of right on the theory that it was a public road and because it was the only means of ingress and egress to the premises owned by them. This evidence alone fully sustains the decree entered by the trial court enjoining the defendant from ob-structing the roadway and we think it is wholly immaterial that the trial court may have granted the relief upon a mistaken notion about the road being a legally established public road.

In the amended petition for an injunction the plaintiffs alleged that they were the owners of the S ½ of the SW ¼ of Sec. 29, Twp. 36, R. 14 in Laclede County, Missouri; that they resided in a dwelling house on said land; that there was a roadway leading from their said premises at the west side thereof in a northwesterly direction, a dis-tance of approximately 300 yards, to a public road; that said roadway was their only means of travel from their said premises to said county public road and to their trading point and market; and that there was no other roadway leading in any direction from their said described premises.

In this connection, we may say that only the west part of the old road is in question here. The rest of it has been under fence by Sellers and those under whom he claims since the road was vacated in 1903. The evidence shows and the trial court found that the part of the road in question extends for a distance of approximately 276 yards across the northeast corner of defendant's land from plaintiffs' property to the present public road leading to Stoutland. In the judgment the court found "that said roadway is approximately 12 feet wide, is a well-traveled roadway, is marked out with ditches on each side, its bed is well worn and defined and it is a monument on the face of the land through which it passes." Defendant was permanently enjoined from placing fences or obstructions across this roadway.

The petition further alleged that the defendant was "the owner of the SE ¼ of the SE ¼ of Sec. 30, Twp. 36, R. 14 in Laclede County, Missouri, which said 40 acres of land adjoins the above described

304

land of plaintiffs on the west; that the above described roadway from plaintiffs' premises to the county public road crosses the northeast corner of defendant's land; that said roadway has been continuously and adversely used for a period of 65 years by the people in that neighborhood and vicinity and by the traveling public with the knowledge of defendant and his predecessors in title; that public money and labor have been expended on said roadway for a number of years; that plaintiffs, their predecessors in title and others have used the said roadway for many years in traveling to and from the property of plaintiffs and other property in that community; that the defendant on or about April 19, 1949 placed posts, wire and fences upon and across said roadway within a few yards from plaintiffs' premises thereby closing said roadway to travel and thereby preventing the plaintiffs from using said roadway as a means of ingress and egress to and from their premises * * *; that plaintiffs have no other means of ingress and egress to and from their property except over the above described roadway; * * * that unless said posts, wire and fences are removed from said roadway plaintiffs will have no means of ingress or egress to and from the described premises; * * * that they have no adequate remedy at law and will sustain irreparable injury unless this court enjoins and restrains defendant from obstructing said roadway and interfering with free passage thereof by the public and the plaintiffs in particular.'' Plaintiffs then prayed for an injunction and "further relief." The answer was in effect a general denial.

It is true that plaintiffs alleged that the road in question was a public road by continuous and adverse user for 65 years and by the expenditure of public money and labor thereon. In so doing they assumed an unnecessary burden, nevertheless plaintiffs did allege a property right in the particular road, to wit, that the road was their only means of ingress and egress from their property to the public highway and they further alleged special and peculiar damage by the obstruction. Further, without objection they proved the use of the road under a claim of right, on the theory that it was a public road, by them and the prior owners of the 80 acres in question from 1903 to 1949. They showed this part of the old road was and had been since 1903, the sole outlet to this property, since a creek, seepy springs and wet ground prevent other access to the relocated public road.

The fact that plaintiffs' land was located on a cul-de-sac and used only by them and those doing business with them was no bar to relief by injunction when their means of ingress and egress was obstructed. "The character of a road, as to whether or not it is public or private, is determined by the extent of the right to use it, and not by the extent to which that right is exercised. If all the people have a right to use it, it is a public way, although the number who have occcasion to exercise the right is very small." Phelps v. Dockins (Mo. App.), 234 S.W. 1022, 1023; Patton v. Forgery, 171 Mo. App. 1, 153 S. W. 575

(one owner) ; Kansas City v. Missouri Pac. R. Co. (Mo. Sup.), 229 S.W. 771, 774.

Further, the right of access to a public road of one living on a cul-de-sac is a property right and injury thereto can only be determined by a judicial investigation in a court. State ex rel. Rutledge v. Public Service Commission, 316 Mo. 233, 289 S. W. 785, 788. And see Annotation: "Private Easement in Vacated Highway," 160 A.L.R. 644, 649. Whether the road was a legally established public road under the statute or whether it was a private road by prescription, plaintiffs had to allege and prove a right in themselves to the relief asked and they had to show special and peculiar damage. Patton v. Forgery, supra, 171 Mo. App. 1, 8. This was necessary to the maintenance of the action on either theory. Assuming that the evidence is insufficient to show the right to relief on the theory that plaintiffs suffered special and peculiar injury by the obstruction of a legally established public road, it clearly shows the right to relief on the theory of interference with plaintiffs' property interest in a private road. Wallach v. Stetina (Mo. App.), 28 S.W. (2d) 389, 390; Novinger v. Shoop (Mo. Sup.), 201 S.W. 64; Downey v. Sklebar (Mo. App.), 261 S.W. 697; Anthony v. Kennard Bldg. Co., 188 Mo. 704, 719, 87 S.W. 921. In either case plaintiffs proved that their rights were obtained by adverse use for a sufficient length of time.

While the proof shows that the part of the old road in question here was open to the public and was used by the public, the evidence also shows that it was plaintiffs only means of ingress and egress and, therefore, while plaintiffs shared its use with the public, the plaintiffs' use was different from that of the general public. Sanford v. Kern, 223 Mo. 616, 628, 122 S.W. 1051; Schroer v. Brooks, 204 Mo. App. 567, 224 S.W. 53, 56(6).

There is authority to the effect that the statutory method of establishing a public road is not the exclusive method (Borders v. Glenn (Mo. App.), 232 S.W. 1062), but a determination of that issue is not essential here.

Since the evidence shows that plaintiffs are entitled to the relief sought and to the relief granted, if the court should find that the cause was brought and tried on an erroneous theory prejudicial to defendant, still the judgment should not be reversed without a remand. In view of the pleadings, the evidence and the findings of the trial court on conflicting evidence, we think the judgment should be affirmed.

 PER CURIAM:—Counsel for respondents Sellers have filed a motion to correct the opinion in this case, designating it as the majority opinion; "to show the true facts." This has reference to statements in the second and third paragraphs of the opinion reciting that after this suit was brought by the respondents Sellers in 1949 and was held

under advisement by the circuit court, they then sold the land involved on January 1, 1951 to a Mr. and Mrs. Gearhart, but that the deed was placed in escrow and not recorded, and the fact of such sale was unknown to the circuit judge or the appellant Swehla until after the cause was decided. Hence appellant Swehla contended the case was and is moot.

Counsel contend the majority opinion, as written, imputes bad faith to them and their clients, the respondents Sellers. We do not so construe the opinion, nor is such imputation intended. The question is a legal issue whether the suit could be carried forward to a conclusion and on appeal by the respondents Sellers after they had sold the land, without a substitution of the real parties in interest.

The motion to correct the opinion is overruled.