Clara Jean RAWLINGS (Taylor), Appellant,

v.

Raymond Lee TAYLOR, Respondent.

No. 25560.

Missouri Court of Appeals,
Kansas City District.

Feb. 25, 1972.

Graham, Paden, Welch & Martin, Michael J. Albano, Independence, for appellant.

Jones & McDaniel, Robert C. Jones, Kansas City, for respondent.

SHANGLER, Chief Judge.

This appeal is the culmination of a sequence of proceedings and judgments by which appellant mother was first relieved, and then denied restoration, of the custody of her infant daughter Sabrina Jean Taylor. On June 11, 1970, the mother's motion to restore the child to her custody was denied. The effect of that determination of rights, from which she now appeals, was to perpetuate the last custody order extant, believed by appellant to have been the judgment of March 27, 1969, which found neither parent a fit custodian and adjudged the custody of the child in the Juvenile Officer of Clay County for placement in a foster home.

The assignment of error initially briefed by appellant in effect charged that the uncontradicted evidence so decisively marks the changed circumstance of her recovery of fitness as custodian of the child as to require, in the best interest of the child, a modification of the custody order of March 27, 1969, and that the trial court's failure to do so was clearly erroneous.

During the pendency of this appeal, however, appellant learned for the first time that the foster home in which Sabrina had been placed (and where she remains) by order of the Court—without notice to appellant mother—was that of the father, respondent Raymond Lee Taylor (who by then had remarried a former wife), although he as well as appellant had been adjudicated by that Court "not fit and proper persons to have (Sabrina's) custody", which adjudication had been neither modified nor otherwise superseded. Appellant became aware of this custodial placement when a box of clothing she had left with the Juvenile Officer for Sabrina was returned with a letter explaining that Mrs. Raymond Taylor, with whom the child was staying, found the nylon clothing unuseable by Sabrina who was allergic to that fabric. This much is conceded by respondent in his brief and oral argument.

This conceded state of facts is the basis for an additional assignment of error appellant raises in her reply brief. Appellant there also asserts that the placement of the child with the father, without notice to her and without evidence that he had regained his fitness and in open contradiction of the court's own subsisting adjudication of March 27, 1969 that respondent was unfit and, further, the court's failure to disclose this state of affairs to appellant during the hearing to modify the March 27, 1969 decree when even then the child was in respondent's custody, bespeaks such a judicial disingenuousness and prejudice as appellant could not have dispelled no matter how cogent her evidence.

As approved by counsel and thereafter filed, the transcript on appeal is insufficient for a determination of either of the points of error raised. Civil Rules 82.12 (b) and 82.14(a) V.A.M.R. provide that the transcript shall contain "all of the record, recitals, proceedings, and evidence necessary to the determination of all questions presented to the appellate court for decision". The questions presented, of course, are whether the court erred in denying appellant's motion to regain custody of her child and whether, in doing so, the court acted fairly, without prejudice or prejudgment. Nowhere, however, does the transcript recite the actual terms or legal effect of the judgment of March 27, 1969, by which appellant and respondent were found unfit as custodians of the child, and by which appellant was deprived of custody and which she now seeks to modify. Nor does the transcript evidence show the con-

ditions of unfitness initially adjudicated, so that the basis for appellate determination of change of condition is lacking. We found it necessary to a full decision of the questions presented to direct the circuit clerk to send up the full judgment entry of March 27, 1969, and, as also authorized by Civil Rule 82.12(c), V.A.M.R., ordered appellant to prepare and file a supplemental transcript of the evidence given in that proceeding. We concluded as well that appellant's failure to include in her transcript the record entries relating to the transfer of the child to respondent after the judgment of March 27, 1969, which conceded fact came to her knowledge only after the commencement of appeal, was a material omission "by error or accident" correctible under Civil Rule 82.12(c). Accordingly, our order was certified to the circuit clerk, this time directing him to send up the original file as well as all judgments whatsoever entered in this cause.

◼ Our conclusion that the entries relating to the transfer of custody to respondent, without hearing or notice to appellant, are properly a part of this record on appeal, comports with the rule that a reviewing court must take the record as it comes, and that statements in briefs of counsel of facts not shown in evidence, whatever the probability of their truth, may not be a basis for review of error, *unless such facts have been conceded by opposing counsel.* Baker v. Missouri National Life Insurance Company, Mo.App., 372 S.W.2d 147, 155 [11–13]; Pretti v. Herre, Mo., 403 S.W.2d 568, 569 [3]; State v. Muir, 136 Mo.App. 118, 117 S.W. 620, 621 [1]. Moreover, to refuse review of appellant's claim of judicial prejudice because not reflected in the trial record is, in the circumstances, to foreclose the possibility of such review altogether because the misconduct of which appellant complains is the concealment of judicial acts affecting her rights, by their nature not apparent of record.

The transcript on appeal as thus supplemented and resupplemented supports this statement of facts. Clara Jean Taylor, then 21 years old, married Raymond Lee Taylor on September 11, 1966. The child Sabrina was born to them on August 11, 1967. When the parties separated six weeks later, without resistance from Clara who was aware of his purpose but who then found it inconvenient to care for the child, Raymond took Sabrina to Boonville and delivered her to his former wife Lorraine Jackson for keeping. When Raymond found living quarters in Kansas City, Kansas in November of 1967, and although Raymond was still married to Clara, Lorraine and the child moved in with him (as did her two sons by a prior marriage). On February 29, 1968, Clara was granted a divorce by default on her petition and was awarded custody of the child although Sabrina had not been with her since she was six weeks old. Notwithstanding, the child continued in the actual custody of Raymond and Lorraine until January 3, 1969, when, after asking to see the child for the first time, Clara with the connivance of her present husband Levi Rawlings, spirited the child away from the Taylor home.

Shortly thereafter, Raymond Taylor filed his motion to set aside the divorce decree for fraud or, alternatively, to modify the decree as to custody. The fraud asserted was that he had been induced to forgo contest of the divorce petition and custody action by Clara's representation that she would not disturb his continued custody of the child. Evidence was heard and, as we have noted, on March 27, 1969, the court determined that neither parent was a fit custodian and ordered custody of Sabrina in the Juvenile Officer of Clay County for placement in a foster home. Appellant mother believed her rights had been concluded by this judgment and submitted to its terms, including a visitation privilege imposed by the Juvenile Officer which stringently limits such visits to her office "under supervision".

Despite the declared findings and judgment, however, the original court file brought up on our order discloses a se-

quence of judicial acts (not apparent on the trial record) designed to defeat the effect of that judgment. On July 24, 1969, without notice to appellant, a home evaluation study of the Taylor residence was undertaken by a Clay County Deputy Juvenile Officer with the obvious end of determining respondent's suitability to have custody of Sabrina. A written report sympathetic to placement was submitted to the court on August 15, 1969. On August 27, 1969, the court "on its own motion" ordered that its earlier placement in a foster home be modified and that the Juvenile Officer place Sabrina "in the home of Raymond Lee Taylor, the defendant" in the custody and supervision of the Juvenile Officer.

On March 4, 1970, appellant believing the positions of the parties had remained as defined by the judgment of March 27, 1969, sought to have the custody of the child restored to her. Only appellant adduced evidence. Then, on June 11, 1970, the court denied appellant's motion, observing that the evidence "of the outlandish conduct of both parties in this case" given in the previous motions was "very vivid" in his mind, and that as he had told the parties when "custody was placed in the Juvenile Officer . . . I was not interested in either one of the parties hereto, because both of them had messed their lives up pretty well. I was interested in the welfare of this child". The effect of the judgment was to perpetuate the custody order of March 27, 1969, which had found neither parent fit to have the child, and in light of the judicial comment could not have been reasonably understood in any other way. Yet, for almost a year the child had been in the custody of her father under an order of the court which nullified the judgment sought to be modified in this proceeding but which remained undisclosed to appellant until after this appeal was lodged.

On this record, the proceeding instituted by appellant on March 4, 1970, to regain custody of her child assumes all the unreality of a mime. The court presided over an action to modify a judgment it had already abjured. The respondent offered no evidence so as not to betray a custody covertly gained and for which the court continued to declare him unfit. The Juvenile Officer, called and interrogated by the court, although fully aware of the child's placement with the father, represented the child was in a foster home to which neither parent could have access and that the only right of visitation for each was in the interview room of the Juvenile Office. Only the appellant mother was without knowledge that the judgment she sought to have modified had not for some time in practical effect been determinative of the rights of the parties.

■ For our purposes, we need not relate all those episodes of concupiscence, moral lapse and chronic marital instability which marked the conduct of the parties and prompted the court's finding of their unfitness for custody of the child. Nor will we review the evidence of the March 4, 1970 hearing to determine whether the change of condition appellant alleges entitles her to custody of the child was proved. The record so clearly shows a failure to accord the appellant mother an open, adversarial hearing, without prejudgment, of her claim that her fitness for custody of the child had been restored that we remand it to the trial court for such an initial determination.

Pending this determination, we will not disturb respondent's custody heretofore illicit. Although the evidence shows him morally flawed, it also shows him as a loving and sheltering father who accepted the child as an infant of six weeks when the mother would not care for her. There is no evidence that respondent's continued custody for a while longer, after a virtually uninterrupted custody during the greater part of her life, would be injurious to the child's interest and welfare.

Upon receipt of our mandate, the trial judge to whom this case may fall shall schedule an early trial to settle the question

of permanent custody of this child whose legal status has for so long been clouded. In the interim, the court in the exercise of a wise discretion, and without delay, shall redefine the visitation rights of appellant mother generously in her favor, including periodic week-end custody, consistent with the relationship of infant daughter and a mother who uneventfully continues to rear a son by a prior marriage and to whom remarriage seems to have brought a new stability and purpose.

The judgment of the trial court is reversed and remanded for proceedings consistent with our mandate.

All concur.

PRITCHARD, SWOFFORD and WASSERSTROM, JJ., not participating because not members of the court when cause was submitted.