**DILLEN et al. v. EDWARDS et al.**

**No. 43616.**

Supreme Court of Missouri.
Division No. 2.

Dec. 14, 1953.

Motion for Rehearing or to Transfer to
Court en Banc Denied Jan. 11, 1954.

Arthur R. Kincaid, Robt. E. Coleberd, Liberty, Lawson, Hale & Coleberd, Liberty, of counsel, for appellants-defendants.

Wherritt & Sevier, Alan F. Wherritt, Robert F. Sevier, Liberty, for respondents.

WESTHUES, Commissioner.

Plaintiffs and the defendants own adjoining lands in Clay County, Missouri. A roadway running generally in an easterly and westerly direction crossed an 80-acre tract of land owned by the defendants. It was defendants' means of ingress and egress to the house located on their land. Plaintiffs and the public generally had been using this roadway for many years. In August, 1951, the defendants erected gates across this roadway and objected to the use of the roadway by the public. The present suit was filed by plaintiffs who own land and also Cooley Lake located to the west of the 80 acres. The object of the suit was to determine whether the roadway was a public road. The trial court decreed that the roadway had been dedicated as a public road and enjoined the defendants from maintaining gates or in any way obstructing the road. The defendants appealed to the Kansas City Court of Appeals, which court transferred the case to this court on the theory that title to real estate was involved. See Dillen v. Edwards, Mo.App., 254 S.W.2d 44. Since this suit involves the question of establishing an easement over defendants' land, title to real estate is involved. Zinser v. Lucks, 361 Mo. 671, 235 S.W.2d 844, loc. cit. 847(3); Chapman v. Schearf, 360 Mo. 551, 229 S.W.2d 552, loc. cit. 553 (1); White v. Bevier Coal Co., Mo., 261 S.W.2d 81. The case of Chapman v. Schearf was decided by the court en banc and should be followed on the question of jurisdiction.

The facts proven may be stated as follows: The defendants Charles H. Ed-

wards and his wife, Sallie, owned the 80 acres traversed by the roadway in dispute. The defendant Cameron Crabtree, a son-in-law of Edwards, occupied the land as a tenant. Edwards purchased the land in 1925. At that time the roadway was located in about the same place as at the time of the trial. Some time before 1930, there was a slight change made in the location of the roadway near the house and barn located on the 80-acre tract. It was also in evidence that prior to 1925, gates were intermittently maintained at the east and also at the west end of the roadway at the boundary line of the 80 acres. The evidence justifies the statement that after Edwards purchased the land, the gates, if there were any there, were no longer used and were permitted to rot. The roadway had been used by the public before Edwards became the owner. The evidence of the witnesses, those for plaintiffs and also for the defendants, was that the general public desiring to use the road did so without hindrance from the time Edwards purchased the land in 1925 until August, 1951. The defendant Charles H. Edwards with commendable frankness testified as follows with reference to the use of the road:

"The witness: Well, the public been going through, the Dillens and those fishermen, hunters, and drunks and sobers and all kinds.

"Q. (By Mr. Hale) Well, why did you permit them to go through? A. Well, I just as neighbors let them go through.

"Mr. Hale: You may ask the witness."

"Cross-Examination

"By Mr. Sevier:

"Q. Mr. Edwards, you have you say permitted them to go through for about 22 or 3 years, haven't you? A. Ever since I—they've been going through ever since I bought the farm; bought the farm in '25.

"Q. Yes, and by they, you mean the Dillens and the public? A. Yeah.

"Q. And you never stopped the public or the Dillens from the use of it, did you? A. No, sir."

The evidence showed beyond dispute that the roadway was used by the public for at least 25 years without the slightest interruption or objection. Defendants contend that they were merely acting the part of good neighbors in permitting the use of their road. It was shown by the evidence that the principal travel over this road was by patrons of plaintiffs who operated a fishing and duck hunting resort at their lake.

As to the maintenance of the road, the evidence disclosed that the defendants probably carried the major burden. However, the plaintiffs also contributed some labor, gravel, and cinders and often used a tractor and drag in keeping the road in condition to travel. Ralph Easley, who was employed by Clay County as a road worker, testified that he "bladed" the road in question with county equipment at least once a year for a number of years. By blading, the witness explained he meant smoothing the road and added that he gave the road a good working about once a year.

Defendants contend that the evidence did not justify the decree of the trial court that the roadway "had been used by plaintiffs and the public for twenty-five years as a public road, that such use had been with the knowledge and acquiescence of the owners in such manner as to imply on their part a dedication of said roadway and an acceptance and use thereof by the plaintiffs and the public as a public highway; * * *." Defendants in their reply brief say, "There is no evidence of any intention, much less a 'clear' intention, on the part of the defendants to dedicate the road in question as a public road. All the evidence shows is, that defendants were good neighbors." The case of State ex rel. McIntosh v. Haworth, Mo.App., 124 S.W.2d 653, was cited in support of the statement. The

court in that case quoted from Elliott, Roads and Streets, 124 S.W.2d loc. cit. 656(4, 5) as follows: " 'If the intent to dedicate is absent, then there is no valid dedication. The intent which the law means, however, is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner. The public, as well as individuals, have a right to rely on the conduct of the owner as indicative of his intent. If the acts are such as would fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate, and they are so received and acted upon by the public, the owner cannot, after acceptance by the public, recall the appropriation.' "

That rule has been applied in many of our cases. See Chapman v. Schearf, supra, 229 S.W.2d loc. cit. 554(3). The conduct of the defendants in this case, as shown by the evidence above outlined, clearly indicated that the roadway was intended to be dedicated for public use. The roadway was improved and its location definite; neighbors were permitted to aid in its maintenance; a county employee using county equipment was permitted to help maintain the road year after year; the public used the road without the slightest hindrance for a period of 25 years or more. The trial court was justified in entering a decree that a public roadway had been established. Cases cited supra, and 28 C.J.S., Easements, § 18, pages 662–670; 39 C.J.S., Highways, § 23, page 941; Rosendahl v. Buecker, Mo.App., 27 S.W.2d 471; Wann v. Gruner, Mo., 251 S.W.2d 57.

The decree of the trial court is hereby affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court.

All concur.