**GRAND LAKE GATHERING SYSTEM, INC., et al., Appellants,**

v.

**R. J. GRAY et al., Appellees.**

**No. 7043.**

Court of Civil Appeals of Texas.

Beaumont.

May 1, 1969.

Guy E. Hopkins and Wm. J. Benardino, Conroe, for appellants.

J. Robert Liles, Conroe, for appellees.

PARKER, Chief Justice.

The appeal is from a final judgment enjoining appellants, hereinafter referred to simply as "Grand Lake", from going upon and entering or further maintaining a pipe line on plaintiffs' lands in Montgomery County. Gray, as the surface lessor of the Hunt Tract of 981 acres, joined by the fee owners thereof, sought a declaratory judgment that the old Conroe-Magnolia Road had been abandoned and that Grand Lake had no right or authority to construct or maintain its pipe line along the right-of-way thereof. Plaintiffs also sought an ancillary injunction to restrain further entry by Grand Lake or by Montgomery County and the Commissioner, G. C. Damuth, who also were joined as parties defendant, and sought a mandatory injunction against

Grand Lake to require the removal of its gas line from the property.

Plaintiffs pleaded both statutory abandonment under Article 6703a, Vernon's Ann.Civ.St., and common-law abandonment of the road and the jury returned favorable answers to the four special issues submitted. The jury found in substance: (1) that the use of the road had become so infrequent that the adjoining landowners enclosed the road with a fence; (2) that the portion of the road which crossed the Hunt Tract had been "continuously under fence" for twenty years prior to the filing of suit; (3) that immediately before the gates across the road were locked, the road was not being used for travel by the public; and (4) the portion of the road through the Hunt Tract had been abandoned by the County.

In answering Special Issue No. 4, the jury was instructed as follows:

"In connection with Special Issue No. 4, you are instructed that the elements of common law abandonment of a road by the public are acts of relinquishment and intention to abandon and both elements must be shown by preponderance of the evidence by the party or parties asserting abandonment, though such intention may be inferred from the parties' conduct."

No complaint is made on appeal as to the instruction above quoted.

The judgment followed the verdict and the pleadings and the appeal is brought forward upon three "no-evidence" points and four challenging the sufficiency of the evidence to support the jury findings.

The evidence only favorable to the findings of the jury is considered in passing upon the "no-evidence" points. The statement of facts is extremely lengthy and many exhibits were tendered by the parties so a complete and detailed review of the testimony of each witness would unduly lengthen this opinion. Instead, having read the record, the evidence is summarized.

A certified copy of the Commissioner's Court Minutes of Montgomery County, Texas, dated in the June term, 1914, classified a road from Conroe to Magnolia to be a Second Class Road. According to Article 6873, Vernon's Sayles' Texas Civil Statutes, 1914, in force at that time, the definition of a Second Class Road was:

"Second class roads.—Second class roads shall be clear of all obstructions and not less than thirty feet wide; stumps six inches and over in diameter to be cut down to six inches of the surface and rounded off; and all stumps less than six inches in diameter to be cut smooth with the ground; all causeways to be made at least sixteen feet wide."

From Conroe it ran in a southwesterly direction about four miles to the San Jacinto River; crossed the river on a bridge; thence to Magnolia, passing through lands that at one time belonged to Kayser (sometimes spelled 'Kiser') and now owned by Jacobs; thence through the subject land owned by the Hunts and leased to R. J. Gray; and thence to Magnolia. In 1940 or 1941, a flood washed out the bridge across the San Jacinto River. This bridge was never replaced. Prior to the flood, bridges also were over gullies and small branches west of the river on the Jacobs Tract. These bridges were washed away in the flood and someone stole the steel spans from them. They were not replaced. From the San Jacinto River to Magnolia, the road was impassable because these gullies or ravines were full of water. After the flood, anyone traveling from Conroe to Magnolia would travel south on Highway 75, crossing the San Jacinto River, continuing to Farm-to-Market Road 1488, and on 1488 to Magnolia—an entirely different route. On April 1st, 1967, the Commissioner's Court of Montgomery County passed an Order closing that portion of the old Conroe-Magnolia Road from the Martha Foster Girl Scout Camp to the San Ja-

cinto River. This is a strip on the east side of the river two miles in length.

The Hunts had been in the lumber manufacturing business. Some 300 acres of their land was north of Lake Creek and south of the San Jacinto River, the remainder being south of Lake Creek. A short time prior to the flood that washed away the bridges, the Hunts fenced their entire tract of land, replacing an old fence. The new fence was a hog wire and barbed wire fence. Before the flood, there were cattle guards where the old Conroe-Magnolia Road intersected the northern and southern lines of the Hunt Tract. Promptly after the flood, wire gates with locks replaced the cattle guards. At that time, the traveling public could not use the road with all bridges out and the gates locked. From then on, such fence was maintained so that it would turn cattle and the gates locked until Grand Lake constructed its pipe line. Within the subject property, the old Conroe-Magnolia Road was closed over 25 continuous years to the traveling public. The entry and construction of the gas pipe line by Grand Lake was in 1967. The land was used for rice farming and grazing cattle by lessees of the Hunts. Since the flood, timber has been cut and removed from the property three times by the Hunts. In 1960, Gray obtained his lease, using the property to graze cattle until the date of trial. The Jacobs family, in recent years, replaced the common fences and locked gate on the boundary lines between the Hunt property and the Jacobs property. There are trees seven inches in diameter and over in the roadway where the old Conroe-Magnolia Road was located through the Hunt property. Photographs show no evidence of grading it.

At one time, Gray requested the County Commissioner to grade a part of the road nearest Magnolia, stating that he would unlock the gate and let him in, to which the Commissioner replied that he could not because it was private property. After the flood, the old road was maintained by Montgomery County south of the Hunt property, but not within it.

It is undisputed that Montgomery County, in 1967, through its Commissioners Court, approved the application of Grand Lake Gathering System, Inc. to lay a gas transmission line along the old Conroe-Magnolia Road and through the property of the Hunts. Such installation was to be on the old right-of-way, and Montgomery County accepted no liability for the installations. The gas transmission line was laid.

Appellants' no-evidence points are each overruled.

Considering the entire record, which included some evidence contrary to that set forth hereinabove, all other points of error challenging the sufficiency of the evidence are overruled.

The evidence in this record convinces this court that the plaintiffs below, by probative evidence, proved statutory abandonment under Article 6703a.

There is a dearth of authority construing this statute and the only case even mentioning it which has been found, County of Calhoun v. Wilson, 425 S.W.2d 846, 854 (Corpus Christi Tex.Civ.App., 1968, error ref. n. r. e.), specifically held it to be inapplicable because of factual matters not present in our case.

Plaintiffs having established a statutory abandonment of the old right-of-way, the judgment based thereon is affirmed.

Likewise, the plaintiffs below, from the record, have proved common-law abandonment of this road.

Probably the leading case upon this facet of the matter is the Griffith v. Allison, 128 Tex. 86, 96 S.W.2d 74, 77 (1936), from which we take this quotation:

"It appears to be well-settled that an abandonment, even of an easement acquired by purchase, occurs when the use for which property is dedicated becomes impossible, or so highly improbable as to

be practically impossible, or where the object of the use for which the property is dedicated wholly fails * * * [citing many cases]."

See also, Adams v. Rowles, 149 Tex. 52, 228 S.W.2d 849, 852 (1950); Kearney & Son v. Fancher, 401 S.W.2d 897, 906 (Fort Worth Tex.Civ.App., 1966, error ref. n. r. e.), and cases therein cited.

The Supreme Court in Adams v. Rowles, supra, quoted from Griffith, supra (228 S. W.2d at p. 852), but did not in any manner dilute its effectiveness. This is particularly true when we consider that in Adams the court invoked Article 5517, V.A.C.S., exempting roads and right-of-ways owned by the public from the statutes of limitation relating to adverse possession. (228 S.W.2d at p. 850.) Five years after the opinion in Adams, the Legislature adopted Article 6703a, V.A.C.S., supra, making an exception to the broad provisions of Article 5517.

We have read carefully all of the cases cited by the appellants, including Dallas County v. Miller, 140 Tex. 242, 166 S.W.2d 922, 924 (1942), holding that mere non-user of an easement will not extinguish it. Appellants, however, also invoke Miller for the proposition that the intention to abandon must be established "by clear and satisfactory evidence." Our review of the record in this instance convinces us that the landowners have discharged their burden under Judge Hickman's holding in Miller. See also: McCraw v. City of Dallas, 420 S.W.2d 793, 797 (Dallas Tex.Civ. App., 1967, error ref. n. r. e.).

The voluminous record herein leads us to cite Plunkett v. Young, 375 S.W.2d 776, 779 (Eastland Tex.Civ.App., 1964, error ref. n. r. e.), wherein the court said in a similar case:

"The evidence of dis-use and that the use of the land as a road has become practically impossible and that the purpose of the road as a public thoroughfare has wholly failed, constitute some evidence of probative force supporting the jury's answer that the public has abandoned the road.

"We have examined and considered all the evidence and find that the jury's answer that the public has abandoned the road is not against the great weight and preponderance of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660."

Upon the basis of having proved common-law abandonment of the road, the judgment of the trial court is affirmed for this reason also.

Gray and the Hunts, as appellees, seasonably filed a motion to dismiss the appeal of G. C. (Bo) Damuth, individually and as Commissioner of Precinct 3, because of his failure to perfect his appeal. Upon submission, all parties agreed in open court such motion should be sustained. The purported appeal of Damuth in both capacities is dismissed. Montgomery County, Grand Lake Gathering System, Inc., and James D. Kolb properly perfected their appeal. The judgment of the trial court is affirmed.