Joyce G. LEE and Ursula A. Lee, Plaintiffs-Appellants,

v.

Ralph C. SMITH and Eileen M. Smith, husband and wife, et al., Defendants-Respondents.

No. 9135.

Missouri Court of Appeals, Springfield District.

Aug. 2, 1972.

---

Claude T. Wood, Dale H. Close, Richland, for plaintiffs appellants.

Hugh Phillips, John E. Parrish, Phillips & Parrish, Camdenton, for defendants respondents.

HOGAN, Judge.

Plaintiffs brought this action to have an allegedly existing roadway declared a public road under the provisions of § 228.190, R.S.Mo. (1969) [1] and to enjoin defendants from obstructing that road. Trial to the court has resulted in a judgment adverse to the plaintiffs, and they appeal.

The parties are adjoining landowners. A description of the land belonging to each is set out in the original and amended petitions, but it is sufficient here to say that the plaintiffs' land lies north of the defendants' and the two tracts are, or once were, traversed by an "S" shaped roadway which runs generally from southwest to northeast. The south end of the road intersects an east-west road near a structure referred to as the Elm Grove School. The northwardly section of the road (re-

---

1. All references to statutes and rules are to R.S.Mo. (1969), V.A.M.S. and V.A.M.R., unless otherwise noted.

ferred to and known, apparently, as the "Dean's Creek end") intersects a bifurcated section line road, one fork of which runs north, the other to the west.

The course and distance of the road is quite clearly shown by plaintiffs' exhibits 11 and 12; it appears to be about 1.8 miles long on these two surveys, and the surveyor who made them testified that the road was 24 feet wide. Plaintiffs' residence appears to be about .7 miles from the south end of the road. It is to be noted, however, that these surveys were not introduced in evidence until the court had heard the plaintiffs' oral proof, which consisted of the testimony, of varying degrees of relevance and certainty, of 20 witnesses. Originally, plaintiffs undertook to describe and locate the road by attaching part of a Camden County road map to their petition and incorporating it as their exhibit "A", as provided by Rule 55.14. Neither the scale of the map nor the length of the roadway is shown on this exhibit, from which the witnesses testified, and counsel's use of this exhibit and their failure to correlate the oral evidence with specifically located points marked on the exhibit has handicapped us in our factual review of the case in much the same way as was true in State ex rel State Highway Commission v. Hill, Mo.App., 373 S.W.2d 666.

The dispute here litigated apparently arose after the defendants barricaded the road near their residence, which is "[p]robably 300 yards" from the south end of the road. In answer to interrogatories, defendants maintained that the plaintiffs refused to close the gate which extended across the road in front of defendants' "mobile home" and drove along the road at high speed, making noise and throwing gravel into defendants' front yard. Plaintiffs testified that the defendants several times closed or slammed the gate shut as plaintiffs approached, which plaintiffs considered insulting. Whatever the merits of their personal differences, the plaintiffs maintained and in general sought to show that the roadway in question was a public roadway along its entire course, by prescription and public maintenance; the defendants insisted that the road was, in the language of their answer, "an existing private trail and driveway", which they had a right to close. Plaintiffs alleged that the southwardly part of the road furnished the sole means of ingress and egress to their property, but testified to the contrary, thus distinguishing this case from Sellers v. Swehla, 364 Mo. 285, 261 S.W.2d 26.

When the cause came on for hearing on October 12, 1970, plaintiffs had the evidence of 20 witnesses, defendants the evidence of one. At the close of plaintiffs' case, defendants moved the court to dismiss plaintiffs' petition and enter judgment for the defendants on the grounds, among others, that plaintiffs had failed to furnish the court with an adequate description of the roadway, and had failed to show that the road in question had been used by the public as a public road for ten years continuously. The court stated it was inclined to sustain the motion, but took the matter under advisement and called for trial briefs. Those briefs were filed and have, incidentally, been included in the transcript. On January 12, 1971, the case was reopened on plaintiffs' motion and plaintiffs were permitted to file an amended petition. The trial court limited its order reopening the case; plaintiffs were only permitted to introduce evidence showing an accurate description of the roadway, but they do not complain of that limitation here. In their amended petition plaintiffs again alleged that the road in question was a public road, and in general followed the allegations of their original petition except as to the description of the roadway.

When the case was reopened, plaintiffs introduced surveys of the road involved. The court refused to receive these surveys, plaintiffs' exhibits 10, 11 and 11A, because it was not shown that they had been commenced from a corner established by the government or re-established according to statute. See Pioneer Cooperage Co. v. Bland and Foster, 228 Mo.App. 994, 1001,

75 S.W.2d 431, 435 [5]. The cause was again continued, and additional evidence was heard from plaintiffs' surveyor on January 19, 1971, in Miller County. At that time, plaintiffs cured the inadmissibility of their exhibits 11 and 11A and offered exhibit 12, which was "an extension of the . . . road from the northern extremity of Plaintiffs' Exhibit 11A on to Deane's (sic) Road." The case was again taken under advisement, and the parties filed further briefs, which again have been included in the transcript. Defendants in their written suggestions renewed their motion to dismiss and for judgment, and finally on May 11, 1971, the trial court entered an order denying plaintiffs' motion for leave to file a second amended petition and granting defendants' motion to dismiss. This appeal followed.

Both parties seek and urge upon this court a sweeping review of the facts and a meticulous consideration of all the inferences possible from the evidence presented, but while we have carefully reviewed the whole record upon both the law and the evidence as required by Rule 73.01(d), neither that rule, nor the constitutional mandate that we reduce our opinion to writing, Mo.Const. art. 5, § 12, nor Rule 84.16(a) either suggests or requires that we digest and restate the whole of the diffuse record presented or that we consider all the peripheral issues which might be discussed. See Smarr v. Smarr, 319 Mo. 1153, 1161–1162, 6 S.W.2d 860, 861–862 [1]; Turner v. Anderson, 236 Mo. 523, 531–532, 139 S.W. 180, 181–182. In the interest of an opinion of reasonable length, we shall limit ourselves to a consideration of the issue we consider to be meritorious and determinative of the appeal. See Bloomfield Reorganized School Dist. No. R–14 v. Stites, Mo., 336 S.W.2d

95, 97; Logsdon v. Duncan, Mo., 293 S.W. 2d 944, 946 [1].

Further by way of qualification, we note that we limit our review to a consideration upon the plaintiffs' trial theory. There are several ways in which land may become a public road or highway, Cochran v. Wilson, 287 Mo. 210, 227, 229 S.W. 1050, 1055 [2]; Connell v. Baker, Mo.App., 458 S.W.2d 573, 576, and plaintiffs' petition in this case is broad enough to allow the court to grant relief, or at least the injunctive relief sought, on either of several theories. Nevertheless, the briefs filed here by the plaintiffs and the various memoranda submitted by them to the trial court show unmistakably that they proceeded below upon the theory that the road involved had become a public road by public user and the expenditure of public money or labor for a period of 10 years, as provided by § 228.190.[2] Having thus characterized their own action, plaintiffs are in no position to repudiate their trial theory here, Gover v. Cleveland, Mo.App., 299 S.W.2d 239, 243 [10], and we must review the case upon the theory presented to the trial court. Gover v. Cleveland, supra, 299 S.W.2d at 243 [13]; Cook v. Bolin, Mo.App., 296 S.W.2d 181, 184 [4–6]. We are aware also that the right of access to a public road by one living on a cul-de-sac or dead end, even though it is a *private* road, is a property right entitled to judicial protection, Sellers v. Swehla, supra, 364 Mo. at 305, 261 S.W.2d at 39; State ex rel Rutledge v. Public Service Commission, 316 Mo. 233, 239, 289 S.W. 785, 787 [3]; Annot., 150 A.L.R. 644, 649–650 (1944), but no such contention was advanced by the plaintiffs in the trial court in either of the two petitions filed or in the second amended petition they proposed to file, nor

**2.** Which in pertinent part provides: "[A]ll roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads; and nonuser by the public for five years continuously of any public road shall be deemed an abandonment and vacation of the same." For general discussion of this statute, which has been in effect in one form or another since 1887, see State ex rel Carter County v. Lewis, Mo.App., 294 S.W.2d 954, 957–958 [1–3]; State v. Kitchen, 205 Mo.App. 31, 33–35, 216 S.W. 981, 982.

did they offer any proof that the .7 miles of road south from their residence to the Elm Grove School furnished their only means of ingress and egress; in fact, they testified to the contrary.

■ As a final preliminary, and because the principles governing our review of the case are in part dispositive of the appeal, we note that contrary to plaintiffs' views, defendants' motion to dismiss or for judgment was not in this case the equivalent of a motion for directed verdict. To the contrary, the effect of defendants' motion here was simply to submit the case for decision upon its merits, and the trial court had the right to weigh the evidence and decide the case against the plaintiffs. Creek v. Union Nat. Bank in Kansas City, Mo., 266 S.W.2d 737, 748 [6]; Rigg v. Hart, Mo., 255 S.W. 2d 778, 779 [3, 4]; Moser v. Williams, Mo. App., 443 S.W.2d 212, 214–215 [1, 2]. We review the case de novo pursuant to Rule 73.01(d), but since no specific findings were requested by the plaintiffs and none were made by the trial court, its general finding resolved all contested issues of fact in favor of the defendants. Rule 73.01 (b); Gover v. Cleveland, supra, 299 S.W. 2d at 244 [15]. Rule 73.01(d) specifically requires that we defer to the findings of the trial court, and although the rule of deference is not absolute, when the finding presented depends upon conflicting oral testimony and the credibility of the witnesses, our appellate courts generally defer to that finding unless they are satisfied it should have been otherwise. In re Petersen's Estate, Mo., 295 S.W.2d 144, 148 [3]; Venie v. South Central Enterprises, Inc., Mo.App., 401 S.W.2d 495, 498 [1] [2]. In our view, the meritorious question in this court is whether the plaintiffs so clearly established the location and extent of the easement they sought to protect that the trial court's judgment can be said to be clearly erroneous within the meaning of Rule 73.01(d).

There is evidence aplenty in this record that the road in question had, at some time, been a public road in common use.

Witness Perkins, for example, testified that he was 75 years of age and that his uncle had once lived on the plaintiffs' "place". Mr. Perkins had been familiar with the road for about 70 years, and when his uncle lived on plaintiffs' property, the road was used by the general public. Mr. Perkins had also lived on the road himself, "in about a·mile" of the south end, and he had, during that time, traveled over the road as far as the Lee property. It had been about 50 years, however, since Mr. Perkins had been over the whole road, and, without saying when or how long he lived near the road, Mr. Perkins testified that it was then "fenced up the other side of Mr. Lee's, there was a gate there the last time I was through there." We are not advised when "the last time [he] was through there" was. Mr. Perkins was no more definite as to time than to say that when he lived near the road he went "two-thirds of the way down to Lee's house." Witness Arnold, 72 years of age, testified that he was also familiar with the road in controversy and was able to recall that long ago "after [the road] gets over to the Lee's place it forks, or it used to when everybody traveled it." Mr. Arnold, and the public generally, had used the road "up until [he] was probably 30 years old", but Mr. Arnold was unable to say how long it had been since he was over the entire length of the road. He had been over the road "down as far as Lee's" "not too awful long ago." There was other testimony in the same general vein, and there was evidence, as plaintiffs argue, that the entire road was still being used by the public. Witness Glackin, for example, testified that he had "been here round 30 years" and that he had frequently traveled the road over its entire length, "all the way through from Elm Grove School to Dean's Creek Road". Although it had been "almost a year" since Mr. Glackin had "traveled [the road] all the way through", it was a "well-traveled road". Plaintiff Joyce Lee testified that he had moved to his present residence in January 1960, and, in response to counsel's question whether he had "known people to

travel on through to the Dean's Creek Road", Mr. Lee answered that it had "been about three years", and such travelers had used a tractor and trailer.

Plaintiffs also had evidence, however, which would clearly support the inference that public user of the northwardly end of the road had been interrupted by the erection of a fence across the road. Plaintiffs called one Tom Thornsberry as a witness. Mr. Thornsberry was 61 years of age. He lived "between two and three miles northwest" of the road in question. He had "known" the road "ever since [he had] been there." Mr. Thornsberry, a commissioner of the special road district in which the road involved was located, testified directly that the "southerly end" of the road, from the plaintiffs' home out to the county road, had been maintained by the special road district "at least eight years", but stated that it had been maintained because the district had "passed the ruling that we would maintain private roads out to the houses, or at least all the roads, once a year." Nevertheless, Mr. Thornberry's brother Ray had lived near the north end of the road—the "Dean's Creek end"—and being asked, "[I]s (sic) there gates across the road northeast of the Smith's house, between there and Dean's Creek?", his interrogation and response proceeded (our emphasis): "A. Yes, sir, in places part of it is fenced. Q. Fenced up? A. *There is not no gates.* . . . A. The last I knew, why, there was gates clean through there. Q. All the way through? A. There may be still, but I don't know if it is fenced up or not." On cross-examination, Mr. Thornsberry was asked: "Q. You testified on direct examination that part of this road was fenced up, is that correct? A. Yes, sir. Q. And where is that, at the Dean's Creek end? A. Yes. Q. Or is it back in from the Dean's Creek end? A. Both. . . . Q. All right, is a part of this road, clear across here (indicating), running from the Elm Grove Road over to the Dean's Creek Road, *does it*

*have a fence across it*? A. Part of it does and also a gate. Q. It is fenced, as well as a gate. A. Yes, sir."

Mr. Thornsberry's testimony continued: "Q. When you say fenced, *you mean that the fence runs across the road*? A. Yes, sir. Q. All right, now, do you know how long that fence has been there? A. No, I don't. Q. . . . I think you said your brother Ray died 12 years ago, is that right? A. Right, something like that, yes. Q. Was it, do you think it was fenced up again about that time? A. I think it was. Q. You believe it was? A. It has been refenced since then. . . . Q. And it was fenced then, it had been apparently fenced to the best of your recollection, it was fenced at the time of the death of your brother, Ray, and that was 12 years ago, and it was refenced later on by Mr. Kuettel, who purchased from Ray's widow, is that right? A. Yes, sir." Mr. Thornsberry went further to say that the fence had been replaced recently (at least as we understand) by a gate.'

 When this contradictory evidence is considered in light of the applicable legal principles, it is readily seen that plaintiffs did not so conclusively establish the first element of their case (continuous, uninterrupted public user for 10 years) that we can confidently say the trial court's judgment is clearly erroneous. § 228.190 provides in terms that nonuser by the public for five years [3] continuously shall be deemed an abandonment and vacation of the road. While it is indubitably true that a road once vacated or abandoned may again become a public road through five years continuous user and public expenditure, still, if a part of the road was abandoned and public user of the road was thus interrupted, the period of limitation would begin anew, as if there had been no prior adverse user. State v. Bishop, 22 Mo.App. 435, 440 [3]; Shellhouse v. State, 110 Ind. 509, 11 N.E. 484, 485; 1 Elliott, Roads and Streets, § 194, pp. 236–237 (1926). And,

3. Prior to 1953, ten years, see § 228.190 R.S.Mo. (1949) and L.1953, p. 674, § 1.

granted that encroachment upon or obstruction of a public highway is an unlawful act, still evidence that access to a public road has been entirely blocked and cut off for ten years and that the encroachment has been submitted to by the public may be taken as evidence that the road has been abandoned. State ex rel State Highway Commission v. Herman, Mo., 405 S.W.2d 904, 907 [2–6]; 39 C.J.S. Highways § 133, p. 1070.[4] Here, the plaintiffs' own evidence strongly indicates that a part of the road they claim to be a public road was fenced completely across, apparently without protest or objection, for a period of 12 years, but the record is so indefinite that neither we nor the trial court could say what segment of the road was abandoned, nor could any court confidently say, upon the record presented, whether the segment abandoned has again become a public road by the operation of § 228.190. So, while defendants' citations dealing with the detail and precision required in describing a country road[5] are to a certain extent inapposite, their point that the plaintiffs failed to locate and establish the course of the easement they sought to protect is in the detailed circumstances well taken and meritorious. In so holding, we bear in mind that abandonment of part of a public road does not of itself constitute an abandonment of the whole road, and a road may be a pubic road even though it has become a cul-de-sac through partial non-user, State ex rel Carter County v. Lewis, Mo.App., 294 S.W.2d 954, 958 [5], but such was not the plaintiffs' contention on trial. To reiterate, the trial court was entitled to weigh the evidence, Creek v. Union Nat. Bank in Kansas City, supra, 266 S.W.2d at 748 [6], and taken as true, Mr. Thornsberry's testimony indicates that a part of the road had been abandoned, but does not specifically locate, directly or by reference to exhibit "A", the abandoned segment. Since exhibits 11 and 12 were not introduced until after Mr. Thornsberry's testimony had been received, and plaintiffs made no effort to correlate the oral testimony with their accurate surveys, the course of that part of the road which was, and may again have become, a public road is simply left in doubt. We cannot therefore say that the plaintiffs so clearly established the course and extent of the road that the trial court's ruling is clearly erroneous.

Taken with the case was defendants' motion to dismiss the appeal because plaintiffs' brief does not comply with Rule 84.04(c), which requires a fair and concise statement of the facts without argument. It may be granted that plaintiffs' brief is subject to some criticism, but it is the vagueness of the record itself and not the deficiencies of the plaintiffs' brief which has presented difficulty on this appeal. Perfection is not required, only a reasonable compliance with the rules, and certainly plaintiffs' brief is not so deficient in the respects argued as to warrant dismissal of the appeal. The motion to dismiss is denied, but, for the reasons stated, the judgment is affirmed.

TITUS, C. J., and STONE, J., concur.

---

4. See also Jesse French Piano & Organ Co. v. Forbes, 129 Ala. 471, 29 So. 683, 684–685; Munn v. Ratcliff, 247 Ark. 609, 446 S.W.2d 664, 667 [1, 2] [5]; Baldwin v. Trimble, 85 Md. 396, 37 A. 176, 178–179 [2]; Grand Lake Gathering System, Inc., v. Gray, Tex.Civ.App., 441 S.W.2d 633, 635–636.

5. See, e. g., Allen v. Smith, Mo.App., 375 S.W.2d 874, 882–883 [21, 22] and cases collated note 3.