STATE of Missouri ex rel. Stone County Special Prosecuting Attorney, Matt SELBY, and Carl Pope, Diane Pope, Kent Bettisworth and Weston Horst, Plaintiffs/Respondents,

v.

Larry DAY and Wanda Day, Defendants/Appellants,

Donnie Ratliff, Joanne Ratliff, Jerry Fielder and Frieda Fielder, Defendants.

No. 20600.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 12, 1996.

Paul F. Sherman, Daniel, Clampett, Powell & Cunningham, Springfield, for defendants/appellants.

Matthew F. Trokey, Cantwell, Allman, Smith & Trokey, L.L.P., Branson, John M. Taylor, Assistant Stone County Prosecutor, Galena, for plaintiffs/respondents.

MONTGOMERY, Chief Judge.

Plaintiffs' first amended petition prayed for injunctive relief against Defendants Donnie and Joanne Ratliff, Jerry and Frieda Fielder, and Larry and Wanda Day (the Days). After a bench trial, the court entered a permanent injunction against Defendants ordering them to "cease and desist from encroaching upon the platted road right of way in Sky Line Addition to Camp Hideaway and Lakeview Addition to Camp Hideaway, as shown on the survey and attached as Exhibit "A" and incorporated by reference."

Only the Days appeal claiming that (1) the survey (Exhibit 4) was inadmissible, (2) the evidence was insufficient to support a finding of dedication in that there was no evidence of acceptance of the public road, and (3) the evidence was insufficient to support a finding of dedication because the evidence was insufficient to find public use of the roadway.

All of the Plaintiffs, except Stone County, Missouri, own property in Sky Line Addition.[1] All of the Defendants own property in Lakeview Addition. Plaintiffs' property lies south of and adjoining an east-west road shown as South Artist Row on the plat of both subdivisions. The Days' property is located on the north side of South Artist Row where the road turns in a northward direction for access to County Road Y–39E. In general, Sky Line Addition lies south of South Artist Row, and Lakeview Addition adjoins the road on the north side.

The plat of both subdivisions shows South Artist Row with a marking of "50" which the trial court interpreted as meaning 50 feet in width. At the east end of South Artist Row, both plats show a north-south road (the access road to County Road Y–39E) which is unnamed and unmarked with a dimension for width. However, as the trial court found, all of the roads marked with dimensions in both subdivisions reveal a width of 50 feet.

The disputed survey shows that some of the Days' fixtures are encroaching upon the 50–foot width of South Artist Row and the north-south access road.

■ The Days' first point reads as follows: The trial court erred in admitting the survey, Exhibit 4, to decide right-of-way because the survey lacked sufficient legal foundation in that the plats upon which the surveyor relied in preparing the survey do not show right-of-way width measurements to monuments of the section, United States survey, subdivision, or other unit in which the property is legally described as required by Missouri law.

We have tried in vain to completely understand the claim of error that the Days at-

---

1. For brevity, we will omit reference "to Camp Hideaway" after we mention either of the two subdivisions involved in this case. Both subdivisions are denominated as additions to Camp Hideaway.

tempt to raise in this point. Regardless of that dilemma, we are able to understand the difference between the claim of error in this point and the objection the Days made at trial.

When Plaintiffs offered the survey in evidence, the attorney for the non-appealing Defendants objected on the basis that the survey's "original one government marker is not tied to another." He argued that "[w]ithout there being the tie into multiple government markers there's no way of knowing its entire accuracy."[2] The Days' attorney voiced his objection by saying, "I join the objection on the survey. I don't believe it's been tied in . . . ."

■ Clearly the Days' objection at trial bears no resemblance to the claim of error asserted in Point I. A party on appeal is held to the specific objections presented to the trial court. *Robinson v. Empiregas Inc. of Hartville*, 906 S.W.2d 829, 836 (Mo.App. 1995).

> Because an appellate court is not a forum in which new points will be considered, but is merely a court of review to determine whether the rulings of the trial court, as there presented, were correct, a party seeking the correction of error must stand or fall on the record made in the trial court, thus it follows that only those objections or grounds of objection which were urged in the trial court, without change and without addition, will be considered on appeal.

*Id.* (citing *Handshy v. Nolte Petroleum Co.*, 421 S.W.2d 198, 202 (Mo.1967)).

■ Furthermore, an appellate court will not convict a trial court of error on an issue which was not put before it to decide. *Scott v. Edwards Transp. Co.*, 889 S.W.2d 144, 147 (Mo.App.1994). For these reasons, the claim of error raised in the Days' first point cannot be presented on appeal.

The Days' two remaining points are closely related and will be discussed together. Es-

sentially, the Days claim that the road in question (1) was never dedicated to the public use and (2) was never accepted or used by the public. We disagree.

■ Our review is governed by Rule 73.01(c) and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment must be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32. The credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of their testimony. *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988). We consider only those facts and inferences favorable to the prevailing party. *Heigert v. Londell Manor, Inc.*, 834 S.W.2d 858, 863 (Mo.App. 1992).

■ Except for state roads, public roads "may be established in three ways: (1) under the provisions of chapter 228, RSMo, (2) by prescription, or (3) by implied or common law dedication." *Atwell v. Jack Henry and Associates*, 748 S.W.2d 929, 934 (Mo.App.1988). In this case, the Plaintiffs' theory was based on common law dedication.

■ In order to establish a common law dedication, it must be shown that (1) the owner, by his unequivocal action, intended to dedicate to public use; (2) the land so dedicated must be accepted by the public; and (3) the land so dedicated must be used by the public. *Wendy's of Mid–Missouri, Inc. v. West*, 606 S.W.2d 215, 217 (Mo.App.1980); *Atwell*, 748 S.W.2d at 935. The evidence in this case supports a finding of common law dedication.

Regarding element (1), the owner recorded the plat of Sky Line Addition in 1947 and the plat of Lakeview Addition in 1954. On the latter date, the owner also recorded a Dedication Deed reciting that all streets in Lakeview Addition, as shown on the annexed plat,

---

**2.** Although not an issue here, the validity of this objection is highly questionable in light of a 1991 amendment to § 60.150, RSMo 1994. The amendment states that "[a] survey may not be rejected, after August 28, 1991, solely on the grounds that it did not commence at a government corner." More than likely, the trial court considered this statute before overruling the objection.

were dedicated to Stone County and to the public for public use. South Artist Row and the north-south access road appear among the platted streets in Lakeview Addition. These actions are sufficient to show the owner's intent to dedicate the streets to public use. *See Wendy's,* 606 S.W.2d at 217; *City of St. Charles v. De Sherlia,* 308 S.W.2d 456, 465 (Mo.App.1957).

The remaining elements of acceptance and public use are also fully supported by the evidence in this case. Public acceptance is shown by the public making use of the road. *Wendy's,* 606 S.W.2d at 217; *Hoechst v. Bangert,* 440 S.W.2d 476, 479 (Mo.1969).

Here, the property owners along South Artist Row had access to their property only by using the road in question. The evidence at trial revealed that those property owners and their visitors have consistently used the road for approximately forty years. On at least two or three occasions, fire trucks and firemen have used the road. Several times a church bus has traversed South Artist Row. Even two of the Days' witnesses testified they had used the road on a limited basis.

The trial court correctly decided that the road in question was dedicated to the public and subsequently accepted and used by the public.

The judgment is affirmed.

CROW, P.J., and SHRUM, J., concur.