## B. Leon KLEEMAN and Glenda Kleeman, Respondents,

v.

## Kiman J. KINGSLEY and Betty Darlene Kingsley, et al., Appellants.

No. 26308.

Missouri Court of Appeals,
Southern District,
Division Two.

May 6, 2005.

Motion for Rehearing or Transfer Denied May 31, 2005.

Richard L. Schnake and Andrew J. Hager, Jr., for Appellants.

Randy J. Reichard, for Respondents.

ROBERT S. BARNEY, Judge.

This is an appeal from the Circuit Court of Lawrence County's judgment pursuant to section 228.190, determining that a certain portion of a strip of land located in Lawrence County has been abandoned and vacated as a public road.[1] The strip of land (hereafter referred to as the "old county road") divides property owned and/or leased by Respondents B. Leon Kleeman and Glenda Kleeman ("Plaintiffs"). It also runs south of Plaintiffs' land and divides properties owned by Appellants (collectively "Defendants").[2] The old county road abuts a road designated as Lawrence County Road 2010 ("county road 2010"), which runs east and west; whereas, the southernmost end of the old county road abuts a road designated as Lawrence County Road 2022 ("county road 2022"), which also runs east and west. The old county road varies in width from thirty-nine feet where it abuts county road 2010 to twenty-six feet at the southern end where it meets county road 2022. Defendants all access their properties by traveling north on the old county road from county road 2022.

Plaintiffs' property consists of three tracts of real estate and they rent a fourth tract from a relative. Plaintiffs run a cattle operation and let their cattle roam freely across their land. They also maintain a small portion of the old county road for ingress and egress for their cattle operation.

As previously related, Defendants' properties are located south of Plaintiffs' property. To the west of the old county road, Ragan owns sixty acres which adjoin the south property line of Plaintiffs' Tract 2; the Duvalls own twenty acres which adjoin Ragan's south property line; and, Louis and Clea Kleeman own forty acres which adjoin the Duvall's south property line. To the east of the old county road, across from Louis and Clea Kleemans' property, lies the Kingsleys' one hundred and thirty-four acres.

It appears that, at various times in the past, Plaintiffs have barricaded parts of the northern portion of the old county road. In 1979 they placed a gate across the road. This particular orange gate was located slightly south of a house on their property and had a "Keep Out" sign on it. That same year, Plaintiffs also installed a cattle panel across the old county road just north of White Oak Creek and in 1986 they placed a cattle panel across the old county road at the northern edge of Defendant Ragan's property. When Plaintiffs' nephew was living on their property "in the mid–80's," he put a "Private Drive" sign on the corner where the old county road meets county road 2010 and the sign remained there until 1996. At some point in time, Plaintiffs also strung a piece of barbed wire and a "No Trespassing" sign across the old county road where it meets county road 2010.

The relief Plaintiffs sought in the trial court included a declaration that the entirety of the old county road was either

---

1. This is the second appeal involving the same parties. *See Kleeman v. Kingsley*, 88 S.W.3d 521 (Mo.App.2002). Statutory references are to RSMo 2000, unless otherwise designated.

2. Appellants are Kiman J. and Betty Darlene Kingsley; Kaleb M. and Cindy Kingsley; Ka-

land W. and Karen K. Kingsley; Kevin Kingsley (collectively, "the Kingsleys"); Gary Don and Frances Dee Duvall ("the Duvalls"); Violet Ragan ("Ragan"); and, Louis and Clea Kleeman.

never established as a public road or had been abandoned by non-use for more than five years per section 228.190. Plaintiffs also sought an injunction to prohibit Defendants from entering onto and removing fencing, trees, and brush from the *northern portion* of the old county road (hereafter referred to as the "disputed area"), which they claimed to own, and requested a judgment for ejectment of Defendants from the disputed area.

Defendants claimed the entirety of the old county road "is a common law public road," and sought to enjoin Plaintiffs from having gates across the disputed area. They also requested an order for Plaintiffs to remove the gates they had previously erected.

Following the second trial in this matter, the trial court entered its "Findings of Fact and Conclusions of Law and Judgment." [3] In its findings, the trial court gave a detailed recitation of the evidence and testimony of the various witnesses who testified live and by way of the stipulated "Exhibit 13." The trial court found and concluded that the old county road was "legally established as a public road by implied or common-law dedication at least as early as 1916 or 1917." The trial court concluded that "based upon the credible evidence the North portion of [the old county road] has been abandoned by non-use," pursuant to the non-user provision of section 228.190. [4] In its judgment, the trial court declared that "the disputed area has

been abandoned as a public road for the reason that for at least five (5) years prior to July of 1996 the disputed area had not been used as a public road," and entered judgment in favor of Plaintiffs and against Defendants on "Plaintiffs' Amended Petition for Preliminary and Permanent Injunction, Ejectment and Declaratory Judgment." [5] This appeal followed.

Defendants raise three points on appeal. They maintain the trial court erred: (1) by its determination that the disputed area of the old county road had been abandoned under the five-year non-user provision of section 228.190, because such a determination was unsupported by the evidence and was against the weight of the evidence; (2) by erroneously applying the law when it determined the disputed area of the old county road had been abandoned per the five-year non-user provision of section 228.190, because Plaintiffs had barricaded the road beginning in 1979, and Plaintiffs cannot rely on any abandonment resulting from their own actions; and, (3) by erroneously applying the law in declaring the disputed area of the old county road had been abandoned under the five-year non-user provisions of section 228.190, because section 228.190 does not apply to roads created by common law dedication.

An appellate court is to sustain a judgment in a court-tried case "unless there is no substantial evidence to support it, unless it is against the weight of the evi-

---

3. At the second trial, the trial court heard live testimony from the following witnesses: Leon Kleeman, Lloyd Thomas, Kiman Kingsley, Ed Carrington, Floyd Barker, and Bobby Hickson. Additionally, the parties stipulated to have the transcript from the previous trial entered into evidence as "Exhibit 13." "Exhibit 13" contained testimony from the following parties: Glenda Kleeman, Joe Ruscha, Tom Leeper, Jimmy Parnell, Jack West, Verne Duvall, Terry Reynolds, Charles Gulick, Lloyd Chilcutt, Cindy Kingsley, Kaleb Kingsley, Dar-

lene Kingsley, Kiman Kingsley, and Louis Kleeman.

4. Section 228.190 provides, in pertinent part, that "nonuse by the public for five years continuously of any public road shall be deemed an abandonment and vacation of the same."

5. The judgment also set out the metes and bounds description of the disputed area that the trial court determined had been abandoned.

dence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).[6] "In assessing if there is substantial evidence, we must defer to the trial court on factual issues and cannot substitute our judgment for that of the trial judge." *Chapman v. Lavy,* 20 S.W.3d 610, 612 (Mo.App.2000). On review of a court-tried case, "due regard is given the opportunity of the trial court to judge the credibility of witnesses." *Matter of Hancock,* 828 S.W.2d 707, 708 (Mo.App.1992). "In determining the sufficiency of the evidence, an appellate court accepts as true the evidence and inferences favorable to the trial court's judgment, disregarding all contrary evidence." *Behr v. Bird Way, Inc.,* 923 S.W.2d 470, 472 (Mo.App.1996). This Court sets aside a judgment on the grounds that it is against the weight of the evidence only when we have a firm belief that the judgment is wrong. *Flathers v. Flathers,* 948 S.W.2d 463, 465 (Mo.App. 1997).

■ We begin our analysis by turning to Defendants' third point on appeal. Defendants assert that, based on *Coffey v. State ex rel. County of Stone,* 893 S.W.2d 843 (Mo.App.1995), section 228.190 "does not apply to roads created by common-law dedication." Accordingly, Defendants maintain the trial court erroneously applied the law in determining the disputed area had been abandoned pursuant to section 228.190. We cannot agree.

■ We immediately observe that no party challenges the trial court's determination that the old county road, including the disputed area, was created by implied or common law dedication.[7] Here, the rec-

6. *Murphy* interpreted the provisions of then Rule 73.01(c). The provisions of that Rule now appear in essentially the same form in Rule 84.13(d), Missouri Court Rules (2005).

7. "A public road, excluding state roads, may be created in one of three ways: '(1) under the provisions of chapter 228, RSMo, (2) by prescription, or (3) by implied common law dedication.' " *Ankrom v. Roberts,* 126 S.W.3d 798, 801 (Mo.App.2004) (quoting *Atwell v. Jack Henry and Assoc., Inc.,* 748 S.W.2d 929, 934 (Mo.App.1988)). "Implied or common-law dedication operates not as a grant, but upon the principle of an estoppel." *Johnson v. Ferguson,* 329 Mo. 363, 44 S.W.2d 650, 653 (1931).

"A claim of common law dedication may prevail absent formal dedication if: (1) there was evidence the owner clearly showed his intent to dedicate the land for public use; (2) the land was accepted by the public; and (3) the land was so used by the public." *Chapman,* 20 S.W.3d at 613. "Dedication is not required to be accepted by a governmental authority, so long as the land is in fact accepted by the public as demonstrated by the use made of it, *which period of use need not exceed any required time limit." Id.* (emphasis added).

While "acts establishing a dedication must be unequivocal, indicating expressly or by plain implication, a purpose to create a right in the public to use the land ... [w]hen there is no actual intention, it is possible that an owner's actions may nevertheless evince an intention to dedicate." *Whittom v. Alexander–Richardson P'ship,* 851 S.W.2d 504, 508 (Mo. banc 1993) (citation omitted). "In such circumstances, because dedication is a theory premised on estoppel rather than on an affirmative grant, the owner can be precluded from resuming rights over the property if the public acts upon the owner's manifestations." *Id.* Furthermore, as stated in *Dillen v. Edwards,*

'[t]he intent which the law means, however, is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner. The public, as well as individuals, have a right to rely on the conduct of the owner as indicative of his intent. If the acts are such as would fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate, and they are so received and acted upon by the public, the owner cannot, after acceptance by the public, recall the appropriation.'

*Dillen v. Edwards,* 263 S.W.2d 433, 434 (Mo. 1953) (quoting *State ex rel. McIntosh v. Haworth,* 124 S.W.2d 653, 656 (Mo.App.1939)),

ord shows the old county road had been opened as a roadway from the north end to the south end as early as 1916 or 1917, without interruption by anyone. As the trial court noted, "[t]he existence of the roadbed, the fencing along it, and the refusal of adjoining landowners to prevent the public from using the [old county road] plainly imply a purpose to create a right in the public to use the land and therefore to dedicate the [old county road] to the public." [8] Additionally, public acceptance was shown in the instant matter by the public making use of the roadway, *State ex rel. Selby v. Day*, 929 S.W.2d 286, 289 (Mo. App.1996), and by public maintenance of the land involved. *See Coffey*, 893 S.W.2d at 847.

Defendants incorrectly argue that, based on this Court's decision in *Coffey*, the non-user provision of section 228.190 has no application to the present matter. In *Coffey*, this Court determined that "the nonuser provision of § 228.190 does not apply when ... lands are voluntarily conveyed to a county to be used for a road for public purposes." *Id.* at 848. Saliently, in the present matter there is no evidence of a conveyance of the relevant property by deed or by other formality as was the case in *Coffey*. *See State ex rel. State Hwy. Comm'n v. Herman*, 405 S.W.2d 904, 907–

08 (Mo.1966).[9] Accordingly, *Coffey* does not prevent the application of the five-year, non-user provision to the instant case. Defendants' third point is denied.

 In their first point on appeal, Defendants maintain the trial court erred in determining that the disputed area was abandoned. Specifically, they argue that such a determination was against the weight of the evidence in light of Plaintiff Leon Kleeman's ("Leon") testimony regarding the use of the disputed area for his cattle operation and other activities as well as other witness testimony that the disputed area was used from the 1960's to the 1990's.

 "The right to use a public road cannot be surrendered or abandoned unless all of the public concur therein, and the loss of such right to use may result only from the acts and doings of the parties entitled to the road...." *Chapman*, 20 S.W.3d at 613. "One asserting abandonment of a public road must carry the burden of showing abandonment by clear and cogent proof." *Seaton v. Weir*, 633 S.W.2d 212, 214 (Mo.App.1982).

In the present matter, there was sufficient testimony to support the trial court's ruling that the disputed area was aban-

---

*overruled on other grounds by Gibson v. Sharp*, 364 Mo. 1007, 270 S.W.2d 721 (1953).

**8.** *See Dillen*, 263 S.W.2d at 434–35 (holding that failure to interrupt or object to public use indicates an intent to dedicate for public use); *Earls v. Majestic Pointe, Ltd.*, 949 S.W.2d 239, 247 (Mo.App.1997) (holding that allowing the public to use a road as sole access to a neighboring tract and never barricading a road reveals an intent to dedicate the road to public use); *Busch v. Hurricane Deck Holding Co.*, 882 S.W.2d 723, 726–27 (Mo.App.1994) (holding that allowing public use without barricading a road evinced intent to dedicate).

**9.** As explained by the Supreme Court of Missouri in *Herman:*

It is true ... that the nonuser provision of § 228.190 was not intended to apply to title of lands voluntarily conveyed in trust to be used for the purpose of establishing streets thereon as they shall be needed and that lands so dedicated in perpetual trust and platted for such purposes can only be abandoned by an act as deliberate as that by which they were acquired, that is by proceeding under § 228.110....

*Herman*, 405 S.W.2d at 908. The court went on to declare that "[t]he nonuser clause [of section 228.190] in positive terms is made applicable to *any* public road, however acquired." *Id.* at 907 (internal quotation omitted).

doned by nonuse pursuant to section 228.190. At the second trial in this matter, Leon testified that since 1974, he and his wife have either rented or owned Tracts 1, 2, 3, and 4, upon which the disputed area lies. Leon stated that he had "never personally seen" Defendants nor anyone else utilizing the disputed area; he never saw any tire tracks on the ground in the disputed area; he never saw any places where bark had been scraped from the trees by vehicles or people; he never saw any grass that had been "mashed down," "torn down," or "tromped down;" he never found any "trash, beer cans," "shell casings," "fishing line," or "traps left by hunters." He also testified that portions of the disputed area were completely impassable to people and vehicles; that the fences that formerly bordered the disputed area were missing in many places; and, that there were portions of the disputed area where it was impossible to discern where a road might have been in the past. Leon went on to state that there were large established trees growing throughout the disputed area, some of which measured fourteen or fifteen inches in diameter; there were numerous trees that had fallen across the disputed area and been overgrown by bushes; and, there was a large amount of brush and grass grown up around the cattle panels he installed, which was illustrative of the fact that they had not been opened in a long time. Leon explained that he maintained the most northern portion of the disputed area as access for his cattle operation, but he did not maintain the entire disputed area. Also, the address for Plaintiffs' cattle operation, for purposes of the County 911 system, is an address on county road 2010 as opposed to being an address on the old county road.

At the previous trial of this matter, Plaintiff Glenda Kleeman ("Glenda") testified that the middle and southern portions of the disputed area, upon which she and her husband pasture their cattle, was "nearly impassable by foot or by horse" for as long as she could recall. She stated that she had never known the disputed area to be used as a public road and she had never seen any evidence that anyone had ever traveled the full-length of the old county road.

The record also reveals that Jack West ("West"), a road commissioner for "the Green Road District," stated that he was unable to find any records showing that public money had been expended on maintaining the disputed area. He testified that in 1996 some gravel had been placed on the south end of the old county road after Defendants Louis and Clea Kleeman built a home which required a driveway access. West stated that the south end of the old county road had required "significant work" on the part of the county, such as the addition of lots of gravel to the road, the addition of several culverts, the removal of brush, and some ditch maintenance. However, it was West's recollection that the disputed area "was always growed [sic] up so much, [he] didn't think you could get through it."

Joe Ruscha ("Ruscha"), the Lawrence County Commissioner, stated that in the fall of 1996, he inspected the old county road. Ruscha stated that he went through a gate at the north end of the old county road, and "drove . . . through kind of a pasture area," and, then as he came into a draw area, he encountered a great deal of brush and turned around because he did not think the area was passable. At a later date, Ruscha said that he entered the old county road from the south end and drove up to Louis and Clea Kleeman's driveway. Beyond their driveway, Ruscha said that the old county road "looked like the brush had been piled up just to the north. The road stopped there." Ruscha

went on to state that it was his opinion that the disputed area "was not used by the public for five years." He stated that he thought the disputed area "was abandoned" and that the fact that it at one time was referenced as Lawrence County Road 1070 was not a finding that it had been an established road, but just a way of referencing that particular location.[10] However, Ruscha stated that no formal order was entered nor were formal abandonment or vacation proceedings initiated.

Defendants offered testimony from several witnesses that there had been sporadic use of the disputed area prior to 1996.[11] However, the only testimony offered by Defendants relating to the use of the disputed area after 1996 was Defendants Cindy and Kaleb Kingsley's testimony that they rode a motorcycle the full-length of the old county road in April of 1997.

While there was conflicting evidence relating to the abandonment of the disputed area for the statutory time period at issue, "it was the trial court's duty, not ours, to resolve the conflict and determine the credibility of witnesses." *Chapman,* 20 S.W.3d at 614. This Court defers to the trial court's determinations of credibility. *Skinner v. Osage County,* 822 S.W.2d 437,

439 (Mo.App.1991). Defendants' first point is denied.

▇▇▇ Lastly, in Point II Defendants maintain the trial court erred in finding the disputed area had been abandoned based on the fact that Plaintiffs barricaded the northern portion of the old county road beginning in 1979 when they first installed cattle panels. Defendants assert Plaintiffs "cannot rely on any abandonment resulting from their own actions." In support, Defendants cite to the language in *Chapman,* which sets out that the right to use a public road is not "surrendered or abandoned unless all of the public concur therein, and the loss of such right to use may result only from the acts and doings of the parties entitled to the road, not from the antagonistic or hostile possession of others." *Chapman,* 20 S.W.3d at 613–14. We distinguish the application of the foregoing principle of law to the present matter.

In *Lee v. Smith,* 484 S.W.2d 38 (Mo.App. 1972), this Court stated that while an "encroachment upon or obstruction of a public highway is an unlawful act ... evidence that access to a public road has been entirely blocked and cut off for ten years[12]

---

10. The docket entry from a September 25, 1996, Lawrence County Commission meeting, states, "After inspection of the Farm Road 1070 in the Green Road District, the County Commission determined that the road was abandoned per RSmo 228.190; North of Farm Road 2022 and South of Farm Road 2010."

11. For example, Tom Leeper testified that he drove through the disputed area in 1985; Charles Gulick testified that he hunted on the disputed area up until 1995; Terry Reynolds testified that the last time he drove on the disputed area was in 1991 or 1992; Kiman and Kaleb Kingsley stated that they had driven through the disputed area in the 1970's and 1980's; Defendant Cindy Kingsley testified that she picked berries and walnuts on the disputed area in 1976 or 1977; and, De-

fendants Cindy and Kaleb Kingsley also testified they drove through the disputed area in March of 1995 in a lime truck.

We also note that there was photographic evidence and witness testimony that in June of 2000, a bulldozer, at the behest of the Kingsleys, was clearing some trees and brush from the old county road near the disputed area when some of the trees landed on Plaintiffs' fence which separates the southwest portion of Plaintiffs' Tract 1 and the Duvalls' property. Plaintiffs' fence was damaged and the present dispute was born partially out of that incident.

12. The Court was apparently making reference to the ten-year non-user provision previously found in section 228.190, prior to 1953. *See Lee,* 484 S.W.2d at 43 n. 3.

and that the encroachment has been submitted to by the public may be taken as evidence that the road has been abandoned." *Id.* at 44 (citing 39 C.J.S. *Highways* § 133, p. 1040);[13] *see also Herman,* 405 S.W.2d at 904.

Given the factual circumstances of the present matter, the fact that Plaintiffs placed various gates, obstructions, and signs across the disputed area is irrelevant to the trial court's finding of abandonment. As stated in *Chapman,* it is the "doings of the parties entitled to [use] the road ..." that is important. *Chapman,* 20 S.W.3d at 613. Accordingly, we look at Defendants' behavior and that of the public at large in determining whether the disputed area was abandoned. Here, had Defendants sought to enter upon and use the disputed area, consistent with safety precautions, they had but to open a gate or climb a fence; specifically complain of the obstructions on the roadway; or, initiate court action to enforce their purported rights to the disputed area. Yet, the weight of the evidence shows Defendants took no such actions. As previously recited, Plaintiffs' evidence relating to the abandonment of the disputed area by the public, including Defendants, was substantial. Defendants' second point is denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., and BATES, C.J., concur.

---

**13.** 39 C.J.S. *Highways* § 131 (2003) sets out in pertinent part that:

The encroachment may, however, be submitted for such a period of time as to raise a fair presumption of abandonment, and the public may be estopped to claim any easement in a road where it has for years been in disuse and closed to travel by permanent structures built across the entire width.

(footnotes omitted).